THE STATE OF IOWA, Appellee, v. M. J. HIGGINS, Appellant.

Jurors: DIVISION OF COUNTY FOR JUDICIAL PURPOSES; CONSTRUCTION OF STATUTES: AMENDMENT: APPEAL. All of the statutes in relation to a division of Pottawattamie county for judicial purposes are considered and it is held that the adoption of section 49 of the Code of 1897 did not repeal the law then in force providing for the holding of courts and drawing of grand and petit jurors in said county, since it is competent for the legislature to provide by a general act relating to the courts of the state that certain of its provisions shall apply to courts already established under a special act.

Statute: EXISTENCE AND PURPOSES: PRESUMPTION. The General Assembly is presumed to know of the existence and purpose of a statute.

Repeal of Statute by Implication. Any reasonable construction of a statute will be adopted to avoid a repeal by implication.

Adultery: ELECTION AS TO OFFENSE; CONTINUOUS RELATION. In a prosecution for adultery where the proof shows a continued adulterous relationship extending over a given period of time, the state will not be required to elect to rely on any particular act of illicit intercourse, even though the indictment charges the offense to have been committed at a certain date.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

FRIDAY, MAY 29, 1903.

THE defendant was indicted for the crime of adultery. Upon trial he was convicted, and sentenced to a term in the penetentiary. He appeals.—*Affirmed.*

*Fremont Benjamin* and *Stone & Tinley*, for appellant.

*Chas. W. Mullan*, Attorney General, and *C. A. Van Vleck*, Assistant Attorney General, for the State.

BISHOP, C. J.—The defendant was indicted, tried, and convicted at a term of the district court being held at Council Bluffs, the county seat of Pottawattamie county. Before the grand jury was sworn, the defendant interposed a challenge to the panel for the reason that the jurors were not selected, drawn, or summoned as required by law; it being said, first, the jurors were not drawn or selected from the body of the county, but from the territory in said county west of the west line of range 40; second, chapter 37, Acts Twenty-Second General Assembly, was repealed by the Code of 1897. It was conceded at the time of challenge that the grand jurors were drawn in the manner provided by law from a list made up exclusively of residents of the territory mentioned in the challenge. The challenge was overruled, and the defendant saved exception. An indictment having been returned, the defendant, upon being brought up for trial, interposed a similar challenge to the petit jury panel, and in respect thereto concession was made as to the facts the same as in connection with the challenge to the grand jury. This challenge was also overruled, and the ruling excepted to. The rulings so made may be considered together.

The statutes of the state are the sole source of authority for the institution and conduct of criminal proceedings and the question here presented must be determined by reference primarily to such statutes. Prior to 1884, all terms of court, both district and circuit, in and for Pottawattamie county, were held at Council Bluffs, and, under the general provisions of law in force, jurors, both grand and petit, were drawn from the body of the

1. DIVISION of county for judicial purposes: construction of statutes: amendment: repeal.

county as a whole.    By chapter 198, Acts Twentieth
General Assembly, it was provided, in substance, that
terms of the circuit court should thereafter be held at
Avoca, and that jurors for such terms should be drawn
from residents of that portion of the county lying east of
the west line of range 40.    The act also provided that
petit jurors for the term of the circuit court to be held at
Council Bluffs should be drawn from residents of that
portion of the county lying west of the west line of said
range.    The act did not, of course, affect the district
court, the sessions of which were thereafter, as thereto-
fore, held at Council Bluffs, and jurors, both grand and
petit, were drawn from the county as a whole.    By chapter
134, Acts Twenty-First General Assembly, the circuit
court was abolished, and by such act (section 5) it was
provided that terms of the district court shall be held "at
all the places where district courts or circuit courts are
held at the time this act takes effect; provided, that the
grand jury shall only be required to attend at county seats,
and the district court shall hold not less than two terms
at other places than county seats where the circuit court
is authorized to be held at the time this act takes effect
and the district court shall hear and determine civil causes,
including probate, only as heretofore exercised at such
places by the circuit court, and jurors shall be drawn
thereat as heretofore provided therefor."    This act was
amended by chapter 37, Acts Twenty-Second General As-
sembly, so that the portion of section 5 above quoted was
made to read as follows: "At all places where district
courts or circuit courts are held at the time this act takes
effect; and grand jurors and petit jurors shall be drawn
and summoned for the terms at all such places according
to law from the territory from which petit jurors have
heretofore been chosen; and the district court shall hold
not less than two terms at other places than county seats
where the circuit court is authorized to be held at the time

this act takes effect, and the district court shall hear and determine all causes, including civil, probate and criminal, within the territory over which the circuit court has heretofore had jurisdiction, and grand and petit jurors shall be drawn thereat as heretofore provided therefor." It appears without controversy that since the taking effect of the act of the Twenty-Second General Assembly and down to the present time grand and petit jurors have been drawn and summoned for the terms at Council Bluffs from the territory west of the west line of range 40, and for the terms at Avoca from the territory east of the west line of range 40. No contention is made but that such was the course marked out and directed by the statute, and therefore, while such statute remained in force and effect at least, legal and proper to be pursued.

The contention in this case arises over the question of the effect to be given to the provisions of the present Code, adopted in 1897. It is said in argument that, while the act of the Twentieth General Assembly, providing for terms of the circuit court at Avoca, is admittedly a special act, yet the acts of the Twenty-First and Twenty-Second General Assemblies referred to are in no sense special, but have all the characteristics of general acts, and must, therefore, be considered and construed as such. Assuming this to be true, it is contended that, in common with all other general acts, they were repealed by virtue of section 49 of the present Code, which provides as follows: "All public and general statutes adopted prior to the present extra session, * * * and all public and special acts the subjects whereof are herein revised, or which are repugnant thereto, are repealed, * * * but local acts are repealed only by express terms or on account of repugnancy." The act of the Twentieth General Assembly by which the circuit court of Avoca was created was without doubt a special act. The purpose thereof was to divide the county of Pottawattamie for judicial purposes,

and in that sense was local in character.    Knowledge of the existence of such act and of the purpose thereof was present the Twenty-First General Assembly when the act abolishing the circuit court and providing for the reorganization of the district court was passed.    Such act, it is true, does not in terms mention the Avoca court, but therein is the pro-vision that terms of the district court shall be held at all places other than county seats where terms of the circuit court had previously been held, and that jurors for such terms of the district court shall be drawn and summoned as theretofore provided for the circuit court terms.    Fur-ther, it is to be said that the General Assembly was well advised of the fact that Avoca was the only place in the state other than a county seat to which the provisions of the act could have application.    So too, like knowledge is to be presumed in connection with the passage of the act of the Twenty-Second General Assembly.    In support of these general propositions, see *State v. Sherman*, 46 Iowa, 415; *Tully v. Beaubien*, 10 Iowa, 187; *Haskel v. Burlington*, 30 Iowa, 232; *State v. McEntee*, 68 Iowa, 381. It is clear, therefore, that it was within the legislative intent that by the act of the Twenty-First General As-sembly, as modified by the act of the Twenty-Second Gen-eral Assembly, the court at Avoca should be continued; in other words, that the original purpose to divide the county of Pottawattamie for judicial purposes should be carried into and made a part of the plan for the reorganization of the courts of the state.    Granting, then, that the acts of the Twenty-First and Twenty-Second General Assemblies are in character general acts, there is manifest the dis-tinct purpose to recognize the act of the Twentieth General Assembly, and to make such act fully effective under the new order of things by providing that courts should still be held at Avoca, and giving to such court all the power possessed by the district court held at county seats.    Thus

2.  STATUTE: ex-istence and purpose: presumption.

recognizing the provisions of the special act, it was entirely competent for the legislature to provide in a general act having relation to the courts of the state that certain of its provisions should apply to the court so established under such special act. That this was improper to be done is not suggested in the argument of counsel before us.

Now, what has been said with reference to the legislative bodies by which the acts referred to were passed is also applicable to the General Assembly which brought into existence the present Code. The existence of the court at Avoca was within its knowledge. The special and local act under which such court was created was by the terms of section 49 reserved from repeal unless repugnant, inasmuch as there is no repeal in express terms. We find no repugnancy. On the other hand, we think it can be said that by section 228 there was recognition made of the former acts creating the court at Avoca, and defining its jurisdiction, and providing in express terms for a continuance thereof. "In the county of Pottawattamie court shall be held at Avoca, as well as at the county seat." In connection with the provision quoted, there is no other provision in the Code defining the territorial jurisdiction of the court, or limiting or prescribing its powers, and no provision as to juries, or the territory from which they shall be drawn. This, we think, may be taken as indicating an intention to recognize the former conditions, and to retain, rather than to repeal, the pre-existing statutes under which the court was maintained. While not controlling, yet, as bearing upon the legislative intent and purpose, the report of the code commission may be properly referred to. Having reference to section 228, it is therein said: "It was not thought necessary to incorporate the special provisions of that act [the act of the Twentieth General Assembly] as to the district from which jurors for the terms of court in the two parts of the county shall be drawn, nor other matters relating to these courts. The

act is, in its nature, special, and will continue in force notwithstanding this Code."

Moreover, it being expressly provided by the Code that the court at Avoca shall continue, the provisions of the former statute fixing the territorial jurisdiction

3. REPEAL of statute by implication. thereof, and for the attendance of jurors upon the terms thereof, if repealed, must be so purely by implication, as there are no express terms of repeal, and no such repugnancy as would of itself work a repeal. Repeals by implication are not favored. *Risdon v. Shank*, 37 Iowa, 82; *Baker v. Shamboat, etc.*, 14 Iowa, 214; *Dubuque v. Harrison*, 34 Iowa, 163. Any reasonable construction will be adopted to avoid a repeal by implication. *State v. Brandt*, 41 Iowa, 593. It follows from what we have said that the challenges to the grand, and petit jury panels were properly overruled.

II. The indictment charges the defendant with the crime of adultery, committed in connection with a woman named Mamie Reilly. It is contended by appellant that the evidence for the state wholly fails to show that the person in connection with whom it is said in the indictment the crime was committed was Mamie Reilly. We think the contention without force. Without setting out the evidence, it is sufficient to state that the woman, while referred to at times as Mamie Higgins, and on some occasions introduced by defendant as his wife, was in fact the woman named in the indictment as Mamie Reilly.

III. At the close of the evidence in chief for the state the defendant moved that the state be required to elect upon which act of adultery it would rely. This motion

4. ADULTRY: election as to offense: continuous offense.. was overruled, and, we think, properly so. The indictment which was returned September 11, 1900, charges that the crime occurred on or about June 18, 1899. The evidence offered on the part of the state is to the effect simply that defendant and the woman Mamie Reilly during the summer of 1899, and

beginning June 18th, continuously boarded and roomed together, occupying the same bed. Such being the conditions of fact, there is no requirement of law making it necessary for the state to pick out one of the nights during such period upon which to rely for a conviction. In cases of this kind it is well settled that distinct acts of the character charged may be proven in explanation of or as characterizing the acts and conduct of the parties complained of as constituting the particular offense as charged. 2 Greenleaf on Evidence, section 47; *State v. Smith*, 108 Iowa, 446; *State v. Briggs*, 68 Iowa 416. And it may be conceded that, where the proof shows distinct and separate offenses of the character charged in the indictment, the state may well be held to elect upon which of such distinct offenses it will rely, the others to be referred to only as tending to throw light upon the association and conduct of the parties on the particular occasion selected. But manifestly such rule can have no application in reason, when the proof shows a continued adulterous relationship extending over a given period of time, such as the testimony in the record before us discloses. The cases cited and relied upon by appellant are not in point. We think there was no error in the ruling complained of.

IV. We have examined each of the rulings of the trial court made in connection with the introduction of the evidence, and find no prejudicial error. The instructions, as we read them, were as fair to the defendant as he could well expect, and no error appears therein. The complaint made by defendant of the conduct of the court and of the county attorney during the argument to the jury is not well taken. It does not appear that in what was said or done there was anything unwarranted, or that could give rise to an unfair prejudice.

On the whole, we think the defendant had a fair trial, and that his conviction was a righteous one. Accordingly, the judgment of the trial court is AFFIRMED.