# IN THE SUPREME COURT OF IOWA

No. 12–0122

Filed December 13, 2013

**TERI ROOT,**

Appellee,

vs.

**TALTON TONEY,**

Appellant.

Appeal from the Iowa District Court for Howard County, Margaret L. Lingreen, Judge.

Appellant challenges the venue of the district court that issued a domestic abuse protective order against him. **AFFIRMED.**

Thomas A. Hurd of Glazebrook, Moe, Johnston & Hurd LLP, Des Moines, for appellant.

Michelle R. Mackel-Wiederanders of Iowa Legal Aid, Des Moines, for appellee.

**WATERMAN, Justice.**

This appeal presents two issues of first impression: (1) whether our court's order closing the clerk of court's public window at 2:30 p.m. triggered Iowa Code section 4.1(34) (2011) to allow a one-day extension of the deadline to file a notice of appeal, and (2) whether a person fleeing domestic abuse who relocates to live in a new county satisfies the residency requirement for venue under Iowa Code section 236.3(1) in an action for a domestic abuse protective order.

Plaintiff fled her marital home in Decatur County to escape her abusive husband, taking their children with her. She found a safe house 250 miles away in Howard County, near her parents' residence, and filed for an order of protection within two days of her arrival. The defendant husband moved to transfer venue from Howard County to Decatur County. The district court denied his motion and entered the protective order. The husband filed his notice of appeal thirty-one days later. The Howard County clerk's public window had closed at 2:30 p.m. the day before, pursuant to a cost-saving order of our court that reduced the normal hours the clerks' offices were open to the public.

We apply Iowa Code section 4.1(34) to hold this appeal was timely filed, and we rescind our court's December 2, 2009 supervisory order that stated this Code section was inapplicable under such circumstances. Our court has constitutional and statutory authority over the judicial branch, including the power to set the office hours of the clerks of court. However, we may not reduce the time allowed to file a notice of appeal without legislative authorization.

On the merits, we hold plaintiff satisfied the residency requirement for venue under Iowa Code section 236.3(1) to obtain a domestic abuse protective order when she relocated to live in a new county to escape

abuse and obtain the support of her family living nearby. Accordingly, for the reasons set forth below, we affirm the venue ruling and protective order entered by the district court in Howard County.

### I. Background Facts and Proceedings.

Teri Root and Talton Toney were married in April 2009 and lived together in a farmhouse in Decatur County near the Missouri border. They have three children together, and Teri has two more children. On October 7, 2011, with three of the children watching, Talton put a belt around Teri's neck and choked her. Teri immediately phoned the Crisis Intervention Center, which in turn called the police. The police came to the couple's home. Talton was arrested after he admitted to police that he choked Teri. Both the police and Teri's domestic abuse victim advocate advised Teri to leave the family home, which was owned by Talton and his parents. Talton's parents came to the house that evening, took Teri's house keys and cell phone, and told her to "get the hell out." Teri took the children and drove 250 miles northeast to Howard County, just across the border from her hometown of Preston, Minnesota. Teri testified she wanted to be close to her parents so that she would have their support during her separation from Talton and their assistance caring for her five children.

Teri found a temporary safe house upon her arrival in Howard County through the local domestic abuse center. Teri visited the emergency room in Howard County the next day, where she received care for her neck injury. On October 10, Teri filed a petition for relief from domestic abuse with the Iowa District Court for Howard County, stating, "I am scared for my safety. [Talton] has threatened to find and kill me if I ever took [the] kids and left." Teri described the October 7 incident and additional abuse, alleging Talton had on other occasions thrown objects

at her, choked her until she lost consciousness, dragged her by her hair, and twisted her arms behind her back to the point she "was afraid they would break." Teri began looking for work in Howard County and, on October 14, rented a home there.

On November 11, Talton filed a motion to dismiss or transfer venue to Decatur County pursuant to Iowa Rule of Civil Procedure 1.808 (governing actions filed in the wrong county). He argued Teri did not reside in Howard County because she had only been present there for three days before she filed her petition. The day before she filed her petition, she completed an intake form at the Howard County hospital that listed her employer in Decatur County and her mailing address in Preston, Minnesota. Talton noted her frequent trips to Preston. He alleged her residence for venue purposes remained in Decatur County, where their marital dissolution action and his criminal charges were pending. Talton argued the Howard County venue would be "unnecessarily costly, duplicative, and extremely prejudicial." He noted the 250-mile driving distance and that several witnesses to the alleged domestic abuse lived in Decatur County.

The district court held an evidentiary hearing on November 28. Teri testified she was renting a home in Howard County and living there. The district court denied Talton's motion to transfer venue in a written ruling filed December 5. The court found that Teri "is residing in Howard County" and that venue for the domestic abuse action was therefore proper in Howard County, as well as in Decatur County where Talton resides. The court found Talton "[did] not face an unreasonable burden of defending [the] action in Howard County" to litigate the limited issue of whether domestic abuse occurred. The district court observed that one of the parties would have to travel ten hours roundtrip whether the

domestic abuse action was heard in Howard County or Decatur County. The court noted a transfer to Decatur County would delay the scheduled hearing for a permanent domestic abuse protective order.

Teri's action went to trial in Howard County on December 19, at which time the district court entered judgment in her favor and issued a final domestic abuse protective order. Talton filed and served notice of his appeal by mail on January 19, 2012, thirty-one days after the judgment. Our court sua sponte gave the parties an opportunity to file statements addressing whether the notice of appeal was timely. Both parties responded. Teri contended the notice of appeal was untimely. Talton argued it was timely under Iowa Code section 4.1(34), which in his view extended the deadline by one day because the Howard County clerk's office closed at 2:30 p.m. on the thirtieth day. A three-justice panel of our court ordered that the timeliness issue should be submitted with the appeal.

## II. Scope of Review.

This appeal presents two issues. First, we need to determine our jurisdiction to hear this appeal, which turns on the timeliness of Talton's notice of appeal, filed thirty-one days after the judgment. This presents a question of law for our court to decide on the interpretation of section 4.1(34), a matter never considered by the district court.

Second, we must decide whether the district court erred by ruling that Teri resided in Howard County to support venue under Iowa Code section 236.3(1). The parties agree that we are to review the district court's ruling on the legal requirements for venue for correction of errors at law. *See Richards v. Anderson Erickson Dairy Co.*, 699 N.W.2d 676, 679 (Iowa 2005); *see also Froman v. Keokuk Health Sys., Inc.*, 755

N.W.2d 528, 529 (Iowa 2008) (reviewing interpretation of venue statute for errors at law).

### III. Timeliness of the Appeal.

We first address the question of whether Talton's appeal is timely. *See City of Des Moines v. City Dev. Bd.*, 633 N.W.2d 305, 309 (Iowa 2001) (noting court is to address jurisdictional issue of timeliness of appeal before reaching merits). "It is axiomatic that compliance with our rules relating to time for appeal are mandatory and jurisdictional." *In re Marriage of Mantz,* 266 N.W.2d 758, 759 (Iowa 1978). "Where an appellant is late in filing, by as little as one day, we are without jurisdiction to consider the appeal." *Id.*; s*ee also* Iowa R. App. P. 6.101(1)(*b*) ("A notice of appeal must be filed within 30 days . . . of the final order or judgment."); *Explore Info. Servs. v. Ct. Info. Sys.*, 636 N.W.2d 50, 54 (Iowa 2001) (noting we must "dismiss a case not meeting [appellate] deadlines even if the parties do not raise the issue").

Talton argues the thirty-day filing deadline in rule 6.101(1)(*b*) was extended by one day because the Howard County Clerk of Court Office closed at 2:30 p.m. on the thirtieth day. He relies on Iowa Code section 4.1(34). Teri argues that Talton's appeal is untimely under Iowa Court Rule 22.40 as explained in our December 2, 2009 supervisory order directing that "section 4.1(34) is not triggered to extend any deadlines" under this circumstance. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Court Closure Days and Public Hours of Clerk of Court Offices* ¶ 2 (Dec. 2, 2009) [hereinafter *Court Closure Days*].

This issue implicates the separation of powers between the three coequal branches of government under our state constitution. Article V, section 4 of the Iowa Constitution expressly empowers our court to exercise "supervisory and administrative control over all inferior judicial

tribunals throughout the state."[1] This obviously includes the power to set the hours of operation of the clerks of court. But, we have interpreted the same constitutional provision to allow the legislature to "set terms and conditions for appeal." *W. Int'l & Nat'l Union Fire Ins. Co. v. Kirkpatrick,* 396 N.W.2d 359, 364 (Iowa 1986). We recognize the legislature's limited role in our appellate process includes the power to prescribe by statute the time allowed to file an appeal and to provide for a one-day extension when the deadline falls on a day our clerk of court is closed in whole or in part. *See* Iowa Code § 4.1(34) (one-day extension); *id.* § 602.4201–02 (time allowed for appeal).

We begin our analysis with the statute governing deadline extensions triggered by court closures. Iowa Code section 4.1(34) states:

> [W]hen by the provisions of a statute or rule prescribed under authority of a statute, the last day for the . . . filing of an appeal from the decision or award of a court . . . falls on a Saturday, a Sunday, *a day on which the office of the clerk of the district court is closed in whole or in part pursuant to the authority of the supreme court,* [ten holidays, and the Monday after a named holiday if that holiday falls on a Sunday], and any day appointed or recommended by the governor of Iowa or the president of the United States as a day of fasting or thanksgiving, *the time shall be extended to include the next day which the office of the clerk of the court . . . is open to receive the filing . . .* of an appeal.

(Emphasis added.)

Traditionally, clerk of court offices were open to the public from 8 a.m. to 4:30 p.m., Monday through Friday. The operative statutory

---

[1]Article V, section 4 of the Iowa Constitution states in full:

The supreme court shall have appellate jurisdiction only in cases in chancery, and shall constitute a court for the correction of errors at law, under such restrictions as the general assembly may, by law, prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and shall exercise a supervisory and administrative control over all inferior judicial tribunals throughout the state.

language at issue in this appeal—"a day on which the office of the clerk of the district court is closed in whole or *in part* pursuant to an order of the supreme court"—was added to section 4.1(34) in 1993. H.F. 113, 75th G.A., 1st Sess. § 1 (Iowa 1993). The introduced version of the legislation included an explanation stating:

> This bill provides that the time for filing for the commencement of a proceeding prior to the statute of limitations running, as well as for other filings, is extended to the next business day in the case of the deadline falling on a day on which the clerk of district court's office is closed pursuant to the supreme court's order directing certain offices of the clerk of the district court to be *open fewer hours.*

*Id.* explanation (emphasis added). There were no relevant substantive amendments before the bill's enactment.[2] Under these circumstances, "[w]e give weight to explanations attached to bills as indications of legislative intent." *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 677 (Iowa 2005); *accord Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 49 (Iowa 2012) (same). This explanation shows the legislature intended to allow litigants until the next business day to file a notice of appeal otherwise due on a day the clerk's office is "open fewer hours" by order of our court. That intent is reflected in the plain

---

[2]There were two changes in wording from the legislation as originally introduced and the final statutory enactment. Specifically, language in the original version of the bill reading "pursuant to an *order* of the supreme court" was revised to state "pursuant to the *authority* of the supreme court." H.F. 113, 75th G.A., 1st Sess. § 1 (emphasis added). The first proposal also included language reading:

> [T]he time shall be extended to include the next day which is not a Saturday, Sunday, a day on which the office of the clerk of the district court is closed in whole or in party pursuant to an order of the supreme court, or legal holiday named in this subsection.

In the final version of the bill, this language was replaced with "the time shall be extended to include the next day which the office of the clerk of the court . . . is open to receive the filing . . . of an appeal." *Id.*

language of section 4.1(34), which extends the deadline when the clerk's office is "closed in whole or *in part*" by this court's order, until "the next day the [clerk's office] is open to receive the filing." *See* Iowa Code § 4.1(34) (emphasis added).

On November 12, 2009, our court issued a supervisory order detailing measures taken in response to a state revenue shortfall. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Actions Taken to Reduce Judicial Branch Operating Expenses* (Nov. 12, 2009). This supervisory order set out the public office hours of the clerk of court offices for each county. The clerk of court office hours in Howard County were reduced to 8 a.m. to 2:30 p.m. on Monday, Wednesday, and Thursday and 8 a.m. to noon on Friday. By notice given in the same order, we adopted Iowa Court Rules 22.39 and 22.40. *Id.* Rule 22.39 provides, "The court shall set the business hours of each office." Iowa Ct. R. 22.39. Rule 22.40 then states, in relevant part:

> For purposes of Iowa Code section 4.1(34), the word "day" means the period of time defined by the public business hours of an office of the clerk of court as established by order of the supreme court.

*Id.* r. 22.40.

On December 2, we issued another supervisory order addressing the interplay between rule 22.40 and section 4.1(34):

> As provided by Iowa Court Rule 22.40, a clerk of court office is open for an entire or whole day for purposes of Iowa Code section 4.1(34) so long as the office is open for the duration of the office's "public business hours" as established by order of this court. For example, if the *public* business hours of an office are from 8:00 a.m. to 4:30 p.m. on Mondays, Wednesdays and Fridays and from 8:00 a.m. to 2:30 p.m. on Tuesdays and Thursdays, and the office is open for the duration of those hours on a given day, the office is considered open for the whole day and Iowa Code section 4.1(34) is not triggered to extend any deadlines.

*Court Closure Days* ¶ 2. Talton's appeal presents our first opportunity to decide whether section 4.1(34) requires a one-day extension when the public window of the clerk's office closed at 2:30 p.m.

We conclude the outcome is dictated by the plain language of the governing statute. Section 4.1(34) expressly allows an appellant a one-day extension to file if the thirty-day deadline falls on "a day on which the office of the clerk of the district court is closed in whole or in part pursuant to the authority of the supreme court." Iowa Code § 4.1(34). The accompanying legislative explanation confirms this provision was intended to provide extra time to file an appeal when our court has ordered a clerk of court office "to be open fewer hours." H.F. 113 explanation. The clerk's office effectively was "closed . . . in part" for that two-hour period and was "open fewer hours." We hold section 4.1(34) entitled Talton to the one-day extension. We are not holding that reasonable adjustments in office hours that still leave a clerk's office open to the public for a basic workday would trigger section 4.1(34). But, we conclude a decision to close offices at least two hours early falls within the statute.

Teri argues this interpretation will lead to an absurd result. She contends the filing deadline will be perpetually extended because the Howard County clerk's office hours were reduced every day of the week, triggering continuous one-day extensions. We disagree. Section 4.1(34) only extends the deadline until the next day the clerk's office is "open to receive the filing," which can be for a period of time short of a full business day. *See* Iowa Code § 4.1(34). Because the Howard County clerk's office was open the next morning, no further extension is granted.

Teri's better argument is that our court's power to change the hours the clerk's office is open to the public includes the power to

redefine regular business hours in a manner that avoids a partial closing triggering section 4.1(34). She relies on our adoption of Iowa Court Rule 22.40 defining "day" to mean the public business hours set by our court and on our December 2, 2009 supervisory order providing that a 2:30 p.m. closure of the public window does not trigger section 4.1(34). The problem with her position is that Talton was otherwise entitled to the one-day extension to file his notice of appeal under section 4.1(34), and the rule change, as interpreted in our supervisory order, thus effectively shortened his time to appeal by one day. We may not " 'change [statutory] terms under the guise of judicial construction.' " *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 571 (Iowa 2002) (quoting *Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530, 533 (Iowa 1981), *overruled on other grounds by Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 260 (Iowa 1995)). Specifically, the time allowed to file a notice of appeal cannot be reduced without legislative approval. *See* Iowa Code § 602.4201(3)(*d*).

The legislature's role in our rulemaking process is governed by Iowa Code section 602.4201(3)(*d*). That section provides that certain appellate rules are subject to the rulemaking requirements of section 602.4202—including Iowa Rule of Appellate Procedure 6.101(1)(*b*), which sets forth the thirty-day deadline to file a notice of appeal. *See* Iowa Code § 602.4201(3)(*d*). The rulemaking requirements include submission of a proposed rule change to the legislative council, which has the power to delay implementation to allow the general assembly to enact a bill changing the rule. *See* Iowa Code § 602.4202; *cf. Butler v. Woodbury County*, 547 N.W.2d 17, 20 (Iowa Ct. App. 1996) (discussing the overlapping roles of the supreme court and legislature in promulgating rules of practice for Iowa courts). Both section 4.1(34) and

section 602.4201(3)(*d*) impact the time allowed to file an appeal. We read these related statutes together. *Kolzow v. State*, 813 N.W.2d 731, 736 (Iowa 2012) ("If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the statutes together in an effort to harmonize them." (Citation and internal quotation marks omitted.)). We did not employ rulemaking procedures when we promulgated rule 22.40 with our supervisory order. In any event, the supervisory order cannot trump the general assembly's authority to set the time to file a notice of appeal.

During the time frame relevant to this case, the Howard County Clerk of Court Office closed at 2:30 p.m. on Monday, Wednesday, and Thursday and closed at 11:30 a.m. on Tuesday and Friday. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Changes to the Business Hours of the Chickasaw and Howard County Clerk of Court Offices* (Oct. 19, 2010). The thirtieth day after the district court entered the final domestic abuse protective order fell on January 18, 2012, a Wednesday, when the Howard County Clerk of Court Office closed at 2:30 p.m. Under section 4.1(34), Talton was entitled to file his appeal the next business day, which he did. As such, his appeal was timely.

### IV. Venue Under Iowa Code Section 236.3(1).

We next turn to Talton's challenge to the district court's ruling denying his motion to transfer venue. Iowa Code section 236.3(1) governs venue under the Domestic Abuse Act, Iowa Code chapter 236, and states "[v]enue shall lie where either party resides." No Iowa appellate decision has interpreted the term "resides" for purposes of section 236.3(1). " '[R]esident . . . is an elastic word with varied statutory meanings, dependent upon the context of the statute in which it is used and the purpose and object to be attained.' " *Kroblin Refrigerated Xpress,*

*Inc. v. Iowa Ins. Guar. Ass'n,* 461 N.W.2d 175, 177 (Iowa 1990) (quoting *Pittsburgh –Des Moines Steel Co. v. Incorporated Town of Clive,* 249 Iowa 1346, 1348, 91 N.W.2d 602, 603–04 (1958)); *see also Democko v. Iowa Dep't of Natural Res.,* 840 N.W.2d 281, 289 (Iowa 2013) ("We recognize the concept of residency can have different meanings depending upon context."). The district court ruled that venue was proper in Howard County, stating:

> In *Kollman v. McGregor,* 240 Iowa 1331, 39 N.W.2d 302 (1949), the Iowa Supreme Court noted that "residence" is distinguishable from domicile as residence indicates the place of dwelling, which may be either permanent or temporary.
>
> [Teri] reports she is living in Howard County, Iowa; she is renting a residence in the county. The fact that [Teri] may do business and travel to visit relatives in the state of Minnesota, in and of itself, does not establish residence in Minnesota. From the available, credible evidence, the Court finds [Teri] is residing in Howard County. Accordingly, venue for this Chapter 236 action lies in Howard County, as well as Decatur County, where [Talton] resides.

We agree with the district court's conclusion that Teri satisfied the residency requirement for venue under the Domestic Abuse Act when she moved to Howard County to live there for family support and to escape Talton's abuse.

Iowa Code chapter 236 does not define the term "resides" or "resident." "When the term 'resident' is undefined in the statute, it becomes an ambiguous term requiring statutory construction to determine its legal meaning." *Kroblin,* 461 N.W.2d at 177–78. We are to "seek a reasonable interpretation . . . that will satisfy the objectives of the statute." *Id.* at 178. The domestic abuse chapter is intended to protect Iowa residents from abuse. *See Christenson v. Christenson,* 472 N.W.2d 279, 280 (Iowa 1991). This intent is manifest throughout the chapter:

> Our domestic-abuse statute evidences a special solicitude for potential abuse victims. It allows a petition to be filed without payment of costs, Iowa Code § 236.3(7); forms are provided for pro se filing, Iowa Code § 236.3A(2); and the county attorney may assist the plaintiff in all stages of the proceeding, Iowa Code § 236.3B.

*Bartsch v. Bartsch*, 636 N.W.2d 3, 9 (Iowa 2001). We give the domestic abuse statute " 'a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.' " *Christenson*, 472 N.W.2d at 280 (quoting *Shidler v. All Am. Life & Fin. Corp.*, 298 N.W.2d 318, 321 (Iowa 1980)).

With these principles in mind, we consider the meaning of "resides" in section 236.3(1). In *Kollman*, we distinguished between "legal" and "actual" residency. 240 Iowa at 1333, 39 N.W.2d at 303. We noted actual residence "may be more temporary in character," but that a person must be more than "a mere temporary sojourner." *Id.* We held the actual residency test applies under the general venue statute for personal actions, which expressly provides for venue where the defendant "*actually* resides." *Id.* at 1332, 39 N.W.2d at 303 (quoting Iowa Code § 616.17) (1946) (emphasis added). Talton argues *Kollman* is distinguishable because Iowa Code section 236.3(1) (2011) omits the qualifier "actually" to provide for venue where "either party resides." Talton advocates for a more stringent "legal residence" standard, relying on our precedent under chapter 598 governing marital dissolutions. Talton notes the venue provisions in chapter 236 and chapter 598 both contain the phrase, "where either party resides." *Compare* Iowa Code § 236.3(1), *with id.* § 598.2. Talton specifically relies on *Hinds v. Hinds*, which interpreted "residency" under the marital-dissolution statute to mean "a legal residence, not an actual resid[ence] alone" and equated residency with domicile. 1 Iowa 36, 49 (1855). That case, however, is

distinguishable. In *Hinds*, the wife had lived in other states, but lived for only a few months in Iowa, and the husband had never lived in Iowa. The 1855 Iowa Code included a six-month minimum residency requirement to obtain a divorce. *Id.* at 38 (citing Iowa Code § 1488 (1855)). This minimum residency requirement guards against interstate forum shopping and protects Iowa decrees against collateral attack. *See Sosna v. Iowa,* 419 U.S. 393, 406–07, 95 S. Ct. 553, 561, 42 L. Ed. 2d 532, 545 (1975) ("Iowa may quite reasonably decide that it does not wish to become a divorce mill for unhappy spouses who have lived there as short a time as appellant . . . ."); *In re Marriage of Kimura,* 471 N.W.2d 869, 877 (Iowa 1991) (equating "residency" to "domicile" for chapter 598 dissolution of marriage action).

Chapter 598 currently includes a one-year, good-faith minimum residency requirement for a petitioner filing for divorce from a spouse living in another state. Iowa Code § 598.5(1)(*k*) (2011). Section 598.5(1)(*k*) provides:

> Except where the respondent is a resident of this state and is served by personal service, [a petition shall] state that the petitioner has been for the last year a resident of the state, specifying the county in which the petitioner has resided and the length of such residence in the state after deducting all absences from the state, and that the maintenance of the residence has been in good faith and not for the purpose of obtaining a dissolution of marriage only.

*Id.* This more stringent legal residency requirement for chapter 598 makes sense in the context of marital dissolutions involving residents of other states, because a more lenient actual residency test would allow litigants to maintain multiple residences to evade Iowa's minimum good-faith state residency requirement. Chapter 236, by contrast, lacks any equivalent provision imposing a minimum period or good-faith-test

requirement for residency within Iowa. Accordingly, the chapter 598 cases are inapposite.

We conclude a more relaxed residency requirement is appropriate to effectuate the purpose of chapter 236—protecting victims of domestic abuse. Section 236.4 provides for expedited orders of protection. *Id.* § 236.4. By omitting a minimum waiting period in section 236.3(1), the legislature presumably intended to allow emergency injunctive relief immediately upon the victim's arrival in the new county where she relocated to live to escape her abuser. Accordingly, we adopt the "actual residence" requirement. We hold that parties seeking orders of protection under chapter 236 need only demonstrate that they are currently living in the county, maintaining a "place of dwelling, which may be either permanent or temporary." *See Kollman*, 240 Iowa at 1333, 39 N.W.2d at 303; *cf. M.R. v. S.R.*, 238 S.W.3d 205, 208 (Mo. Ct. App. 2007) (concluding victim satisfied protective order venue residency requirement based on evidence she "was living with her parents and that she planned to remain there until her legal problems with her husband were resolved"). A more stringent legal residency requirement would discourage victims of domestic abuse from moving away from their abuser's home county or delay relief for those who do move to another county. As the facts of this case demonstrate, victims fleeing abuse often are required to seek temporary shelter while they are displaced and their lives are in disarray.

We are not confronted with an evidentiary record showing the alleged victim filed for an order of protection in a remote county solely to gain a tactical advantage. *See Froman*, 755 N.W.2d at 531 ("When possible, we seek to construe venue statutes so as to minimize forum shopping."). Actions for a domestic abuse protective order are equitable

proceedings. *Wilker v. Wilker,* 630 N.W.2d 590, 594 (Iowa 2001). Our district courts have discretion to fashion relief based on the equities. Specifically, defendants may challenge venue on forum non conveniens grounds when "the relative inconveniences [are] so unbalanced that jurisdiction should be declined on an equitable basis." *Silversmith v. Kenosha Auto Transp.,* 301 N.W.2d 725, 727 (Iowa 1981) (citation and internal quotation marks omitted); *see also Hoth v. Sexton,* 539 N.W.2d 137, 139 (Iowa 1995) ("We have viewed the doctrine as a self-imposed limit used to avoid unfair, vexatious and oppressive actions in a forum away from the defendant's domicile."); *In re Marriage of Kimura,* 471 N.W.2d at 879 ("Whether to apply the doctrine of forum non conveniens lies in the sound discretion of the district court."). This is not such a case. The district court rejected Talton's forum non conveniens argument, and he has not challenged this discretionary ruling on appeal.

Applying the broad definition of "reside" to the facts of this case, we agree the district court correctly found that Teri resided in Howard County. Teri provided a compelling reason for fleeing to Howard County: her parents lived nearby and she needed their support. Teri lived in a safe house in Howard County for two days prior to filing her petition and sought medical care at the county emergency room. By the time of the hearing regarding venue, she was renting a house in Howard County and looking for work there. Finally, there is no indication that Teri traveled to Howard County for forum-shopping purposes. Talton failed to disprove Teri's evidence that she resided in Howard County when she filed for her order of protection, notwithstanding their marital residence in Decatur County. Teri was physically present and living in Howard County at the time she filed her petition; she was more than a "temporary sojourner." *Kollman,* 240 Iowa at 1333, 39 N.W.2d at 303.

Under these facts, she resided there for purposes of venue under section 236.3(1).

## V.  Conclusion.

For these reasons, we hold Talton's appeal was timely.  We affirm the district court's ruling that venue was proper in Howard County under Iowa Code section 236.3(1), and we affirm the order of protection entered there.

**AFFIRMED**.