**IN THE COURT OF APPEALS OF IOWA**

No. 18-0179
Filed April 1, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ROBERT ARTHUR REYNOLDS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Susan Larson Christensen, Judge.

Robert Reynolds appeals his conviction for second-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

Robert Reynolds shot a woman to death in East Pottawattamie County. A jury found him guilty of first-degree murder. On direct appeal, this court reversed and remanded the case for a new trial based on the district court's decision to change venue from one part of the county to another within the bifurcated district. *See State v. Reynolds*, No. 15-0226, 2016 WL 6652311, at *5 (Iowa Ct. App. Nov. 9, 2016). We stated, "If a change of venue was otherwise called for here, the district court should have either moved the entire case to West Pottawattamie County and summoned jurors from West Pottawattamie County or kept the case in East Pottawattamie County and held trial at an East Pottawattamie County location." *Id.*

On remand, Reynolds moved to dismiss the matter. He alleged "[v]enue and jurisdiction in the Iowa District Court of Pottawattamie County at Council Bluffs [were] inappropriate, and he "should have properly been indicted in the Iowa District Court of Pottawattamie County at Avoca, Iowa, if at all." The district court denied the motion. Reynolds waived his right to a jury trial, and the State amended the charge to second-degree murder. Following a bench trial, the district court found Reynolds guilty.

On appeal, Reynolds contends (1) the district court lacked authority to hear the case because the trial information was filed in West Pottawattamie County rather than East Pottawattamie County; (2) the district court violated his due process rights by disallowing an insanity defense; and (3) the district court's finding of guilt was not supported by sufficient evidence and was contrary to the weight of the evidence.

## I.    Dismissal Ruling

Iowa Code section 803.2(1) (2014) states that criminal actions "should be tried in the county in which the crime is committed, except as otherwise provided by law."  Iowa Code section 607A.23 states:

> In counties which are divided for judicial purposes, and in which court is held at more than one place, each division shall be treated as a separate county, and the grand and petit jurors, selected to serve in the respective courts, shall be drawn from the division of the county in which the court is held and at which the persons are required to serve.

And, at the time of the offense, Iowa Code section 602.6105(2) stated "[i]n any county having two county seats, court shall be held at each, and in the county of Pottawattamie, court shall be held at Avoca, as well as at the county seat."[1]

In 1992, the supreme court closed the clerk of court's office in Avoca.[2]  The chief judge of the district followed up by ordering "all pending files and records transferred to the Clerk's office at Council Bluffs."  The Avoca clerk's office has remained closed.

The prosecutor cited the closure in resisting Reynolds' dismissal motion. He noted that the trial information was filed with the clerk of court in Council Bluffs, who was "[t]he only clerk of court . . . available at the time it was filed in 2014."  The district court agreed and overruled the motion to dismiss.  On appeal, Reynolds insists the trial information should have been filed in Avoca.

---

[1] That language was amended in 2015 to delete the reference to Pottawattamie County.  The statute now states: "In any county having two county seats, court shall be held at each county seat."  Iowa Code § 602.6105(2).

[2] The order, which is included in our record, stated, "It is . . . ordered that the clerk of court's office in Avoca, Pottawattamie County, be closed as soon as reasonably practical."

As a preliminary matter, Reynolds concedes the filing in Council Bluffs did not divest the district court of subject matter jurisdiction but only authority to hear the case. *See State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) (distinguishing subject matter jurisdiction from authority to hear a case and stating the latter may be waived if not raised). Because he raised the issue and the issue was decided, error was preserved and we proceed to the merits of the dismissal ruling.

The second courthouse in Pottawattamie County was created by statute over a century ago. *See State v. Pelser*, 163 N.W. 600, 602 (Iowa 1917) ("The 21st General Assembly abolished the circuit court, placing all powers and duties of the circuit court upon the district court; and by section 5 of the act, chapter 134, provided for holding sessions of the district court at Avoca."); *State v. Higgins*, 95 N.W. 244, 246 (Iowa 1903) ("[I]t was within the legislative intent that by the act of the Twenty-First General Assembly, as modified by the act of the Twenty-Second General Assembly, the court at Avoca should be continued; in other words, that the original purpose to divide the county of Pottawattamie for judicial purposes should be carried into and made a part of the plan for the reorganization of the courts of the state."). The existence of two courthouses within the same county spawned litigation to resolve the jurisdictional reach of each. *See Higgins*, 95 N.W. at 246.

In *Pleak v. Marks & Shields*, 152 N.W. 63, 64 (Iowa 1915), the supreme court was asked to decide the identical question raised here: whether "the two divisions are the equivalent of two counties, and . . . the bringing of the action in the Avoca division was equivalent to bringing it in the wrong county." The court

side-stepped the issue, stating "[u]pon the record before us we do not find it necessary to pass upon it." *Pleak*, 152 N.W. at 64. The court noted that "[t]he transaction out of which this suit arose occurred wholly in the Avoca district." *Id.*

One hundred years after *Pleak*, the legislature repealed the 1884 Iowa Acts, chapter 198 and, as noted, amended section 602.6105(2) to delete references to Pottawattamie County and Avoca. *See* 2015 Iowa Acts ch. 138 § 70–71. The repeal and amendment postdated the State's filing of the trial information in this case. *See Reynolds*, 2016 WL 6652311, at *4 n.4. For that reason, we looked to the 1884 Act in Reynolds' first appeal. *Id.*

The 1884 Act contained the following provision: "It shall be the duty of the clerk of the courts of Pottawattamie county to keep an office at Avoca and perform all the duties of clerk of the circuit court at Avoca." Ch. 198 § 5, 20th Gen. Assemb. (Iowa 1884). The language supports Reynolds' argument that there had to be a clerk of court in Avoca to accept and file the State's trial information. That said, the Iowa Constitution vests the supreme court with "supervisory and administrative control over all inferior judicial tribunals throughout the state." Iowa Const. art. V, § 4. *See also* Iowa Code § 602.1201 ("The supreme court has supervisory and administrative control over the judicial branch and over all judicial officers and court employees."); *Root v. Toney*, 841 N.W.2d 83, 87 (Iowa 2013) ("Article V, section 4 of the Iowa Constitution expressly empowers our court to exercise 'supervisory and administrative control over all inferior judicial tribunals throughout the state.' This obviously includes the power to set the hours of operation of the clerks of court."); *State v. Hoegh*, 632 N.W.2d 885, 888 (Iowa 2001) ("It is fundamental to our system of government that the authority for courts to act is conferred by the

constitution or by statute. Yet, it is equally fundamental that in addition to these delegated powers, courts also possess broad powers to do whatever is reasonably necessary to discharge their traditional responsibilities."); Op. Iowa Att'y Gen. No. 90-3-4(L) (Mar. 7, 1990), 1990 WL 484887, at *3 ("Other than statutorily mandated legal holidays, it is the court system, under the supervision of the Iowa Supreme Court, which decides when court offices, including the clerk of court office, will close."). The supreme court exercised its supervisory authority in closing the office of the Avoca clerk of court. Further, the chief judge of the district acted pursuant to the supreme court order in transferring pending files to the clerk of court in Council Bluffs.

As the district court concluded, the State filed its trial information with the only available clerk's office in the county. We discern no error in the court's ruling denying Reynolds' motion to dismiss the trial information.

## II.   *Insanity Defense*

Reynolds filed a notice of intent to rely on an insanity defense. The State moved to strike the defense. Following a hearing at which the court considered a defense expert's report on Reynolds' state of mind, the district court found "no compelling evidence to permit submission for jury determination the affirmative defense of insanity." The court also disallowed the "affirmative defense of diminished responsibility" but found Reynolds' "temporary intoxication may be admissible not as a defense but only regarding motive or intent."

On appeal, Reynolds argues, "[T]he district court's ruling that he may not rely on the insanity defense at the time of trial violated his due process right to present a defense." The State responds that Reynolds "failed to preserve error"

because "he never claimed that the district court's ruling implicated his [constitutional] right to present a defense."

We agree Reynolds failed to preserve error on the due process claim. Reynolds alternatively raises the issue under an ineffective-assistance-of-counsel rubric. We find the record inadequate to address the issue. *See State v. Clark*, 814 N.W.2d 551, 567 (Iowa 2012) ("In this case, any arguments on the subject of ineffective assistance of counsel have been raised in 'a general or conclusory manner.' For this reason, the record is not sufficient for us to address them." (citation omitted)).

Under the same heading, Reynolds asserts we should "revisit [*State v. Booth*, 169 N.W.2d 869 (Iowa 1969),] . . . and conclude that evidence of voluntary intoxication which produces temporary insanity can be a complete defense to a crime." Assuming without deciding the issue is preserved for our review, Reynolds acknowledges this court is not at liberty to overrule supreme court precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

### III.    *Sufficiency of the Evidence/Weight of the Evidence*

The district court summarized "[t]he elements of Murder in the Second Degree, as charged in the amended Trial Information filed in this case" as follows: "(1) On or about April 8, 2014, Robert Reynolds shot [a woman.] (2) [The woman] died as a result of being shot. (3) Robert Reynolds acted with malice aforethought." Reynolds contends the evidence was insufficient to support the malice aforethought element.

"Malice aforethought requires the actor to have 'a fixed purpose or design to do physical harm to another that exists before the act is committed.'" *State v.*

*Tyler*, 873 N.W.2d 741, 751 (Iowa 2016) (quoting *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010)). "The relationship that must be shown between the state of mind that is malice aforethought and the homicidal act is more accurately characterized as a causal relationship than as a temporal relationship." *State v. Lee*, 494 N.W.2d 706, 707 (Iowa 1993). "[I]t need not be shown to have existed for any length of time before, but only requires such deliberation as makes a person appreciate and understand at the time the act is committed its nature and probable consequences as distinguished from an act done in the heat of passion." *State v. Serrato*, 787 N.W.2d 462, 469 (Iowa 2010) (quoting *State v. Gramenz*, 126 N.W.2d 285, 290 (Iowa 1964)).

The law allows a presumption of malice aforethought from the use of a deadly weapon in the absence of evidence to the contrary. *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). The "presumption may be rebutted by evidence showing the killing was accidental, under provocation, or because of mental incapacity." *Id.*

The district court found the following pertinent facts. A friend of Reynolds' wife Theresa planned to spend the night at the Reynolds home before catching a flight the next morning. Reynolds, Theresa, and the friend were drinking but, according to Theresa's teenage daughter, "not more than usual." The daughter went to bed but was awoken by a commotion in the kitchen. She went to the kitchen and saw her step-father Reynolds yelling at the friend. She told them to knock it off. After taking her nephew to the basement, she turned "to go back upstairs." "As she hit her bedroom door, she heard the first gunshot," then a "second gunshot," and as "she turned the corner at the top of the steps," she heard

"the third and final gunshot." She saw "Reynolds with the gun and [the friend] on the floor with a lot of blood." She called 911 and stated, Reynolds "shot and killed my mom's friend!"

Meanwhile, Theresa had fallen asleep on the couch with her grandson but awoke to "yelling in the kitchen." She ran in and saw her friend cowering on the floor and Reynolds "yelling that [the friend] was a demon or possessed." Theresa told Reynolds to "just go to bed." At that point, "Reynolds went to the bedroom but returned to the kitchen with a gun that was kept in the headboard of their bed." He "shoved [Theresa] out of the way, went over to where [the friend] was lying, stood over her and then shot her."

The court found that Reynolds acted with malice aforethought. The court noted that he "had several opportunities to deliberate—even if for a short time." The court cited the moments after Theresa and her daughter entered the kitchen, the period of time when Reynolds "went to his bedroom" and "chose to grab his loaded Glock 9 mm handgun from the inside of their headboard and return to the kitchen," the period when Theresa "stood between" Reynolds and her friend, and a moment when the friend held "up her arm in the face of imminent danger." The court's findings tracked the testimony of Theresa and her daughter almost verbatim.

We recognize that both witnesses characterized Reynolds' demeanor as inconsistent with the norm. Theresa's daughter agreed he showed no emotion after the shooting and she "had never seen . . . Reynolds look like that in all the years that" she had known him. Theresa confirmed Reynolds was screaming, "Can't you see what she's doing?" and his statement did not make sense to her.

She conceded she had never seem him like this before and had never seen him this mad. She agreed she had commented that it was like "he was looking through us not at us." She also agreed he called the woman "a demon." She conceded Reynolds began drinking early in the afternoon and continued drinking. But she testified Reynolds acted without provocation.

The witness descriptions of Reynolds' demeanor supported the defense expert's opinion that the way Reynolds looked would be "consistent with someone who would be suffering from an alcohol-induced psychotic disorder" lasting "about a day, 24 hours." But "where the defendant has been charged with second-degree murder, a general intent crime, the defendant's voluntary intoxication cannot negate malice aforethought and reduce the crime to manslaughter." *State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986); *State v. Hall*, 214 N.W.2d 205, 209 (Iowa 1974) ("[I]f a drunken [person] takes the life of another, unaccompanied by circumstances of provocation or justification, the jury will be warranted in finding the existence of malice, though express malice has not been proven.") (quoting *State v. Wilson*, 147 N.W. 739, 740 (Iowa 1914)). In short, even if Reynolds' appearance was indicative of the specified disorder, it did not preclude a finding that he acted with malice aforethought.

Substantial evidence supports the district court's finding of malice aforethought and the court's finding of guilt. *See State v. Bower*, 725 N.W.2d 435, 444 (Iowa 2006). In light of our conclusion that the State proved the elements of second-degree murder, we need not reach Reynolds' contention that the court should have considered the lesser included offense of voluntary manslaughter.

In the alternative, Reynolds argues "the weight of the credible evidence does not support the court's verdict." Reynolds did not raise this ground in his new trial motion or in argument at sentencing, nor did the court rule on it. Accordingly, error was not preserved. *See State v. Thompson*, 836 N.W.2d 470, 491 (Iowa 2013) ("On appeal, Thompson relies on Iowa Rule of Criminal Procedure 2.24(2)(b)(6) and *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). However, Thompson's counsel never cited that rule or *Ellis* in his posttrial motion or during the hearing on that motion in district court."); *Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("[T]his court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal"). But even if we were to consider the merits, we would discern no abuse of discretion. *See State v. Grant*, 722 N.W.2d 645, 648–49 (Iowa 2006). As the supreme court stated in *Grant*,

> The granting of a new trial based on the conclusion that a verdict is against the weight of the evidence is reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process. In the present case, all of the evidence presented was carefully reviewed by the district court in its findings of fact. There is no basis for concluding that any critical piece of evidence was ignored in the trial court's decision process.

*Id.* We affirm the district court's denial of Reynolds' new trial motion and his judgment and sentence for second-degree murder.

**AFFIRMED.**