# IN THE SUPREME COURT OF IOWA

No. 19–1259

Submitted September 17, 2020—Filed February 5, 2021

**STATE OF IOWA,**

Appellee,

vs.

**HOWARD J. THOMPSON,**

Appellant.

---

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

The defendant challenges his convictions for attempting to obtain a prescription drug by deceit and conspiracy to commit a nonforcible felony and challenges a statute disallowing represented parties from filing pro se supplemental documents. **CONVICTIONS AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which Waterman, Mansfield, and Oxley, JJ., joined. McDermott, J., filed an opinion concurring in part and dissenting in part in which Christensen, C.J., and Appel, J., joined.

Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Thomas J. Ogden, Assistant Attorney General, Michael Walton, County Attorney, and Nathan Repp and Jonathan Noble, Assistant County Attorneys, for appellee.

**McDONALD, Justice.**

Howard Thompson was convicted of two counts of attempting to obtain a prescription drug by deceit, as a habitual offender, in violation of Iowa Code section 155A.23(1) (2019), and one count of conspiracy to commit a nonforcible felony, in violation of Iowa Code section 706.3(2). Thompson raises two challenges in this direct appeal. First, Thompson contends the district court abused its discretion in admitting evidence regarding Thompson's residential address, which was offered to prove Thompson's knowledge, motive, and intent. Second, Thompson challenges the constitutionality of a newly-enacted law that prohibits a represented defendant from filing pro se documents.

I.

On June 5, 2017, Thompson and his friend, Markita Elverton, drove together to a local grocery-store pharmacy. Elverton entered the store alone and presented to the pharmacy technician a prescription for Elverton for oxycodone. After dropping off the prescription, Elverton went to the customer service counter and mailed a letter. The return address on the letter was Markita Elverton, 1303 14th Street, DeWitt, Iowa. After mailing the letter, Elverton returned to the vehicle where Thompson was waiting. An employee of the pharmacy called the doctor's office identified in the prescription and learned the prescription was fraudulent. A manager of the pharmacy notified law enforcement.

After Elverton returned to the vehicle where Thompson was waiting, she and Thompson drove across the street to a different pharmacy. This time, Thompson entered the store alone, and Elverton waited in the vehicle. Thompson dropped off a prescription for Claudia Williamson for hydrocodone. Hailey Drobushevich, the pharmacy technician, asked Thompson for an address. Drobushevich testified Thompson gave the

address 1303 6th Street, Dewitt, Iowa. Thompson then returned to the vehicle where Elverton was waiting. An employee of the pharmacy called the doctor's office identified in the prescription and learned the prescription was fraudulent. A manager notified law enforcement.

After Thompson returned to the vehicle, he and Elverton drove back across the street to the first pharmacy. Although Elverton dropped off the prescription just moments before, Thompson entered the store to pick up the prescription. While Thompson was standing by the pharmacy counter, he was approached by responding officer Cristina Thomas. Officer Thomas first asked, "Hey man, what's going on? Do you have an ID on you, sir?" Thompson replied, "No." Officer Thomas asked, "Do you know why I'm here?" And Thompson said, "No." "Okay, the reason I'm here is because, apparently, you're trying to pick up a fraudulent prescription," Thomas stated. Thompson denied he was picking up a prescription, stating, "How I'm trying to pick it up though?" Thomas asked, "Are you trying to pick up a prescription, a prescription, for an [Overton/Elverton]?" And Thompson replied, "No." Thomas then asked Thompson, "Okay. Do you have any weapons on you or anything, sir?" Thompson then bolted out of the store. Thomas chased him out of the store, across the parking lot, and through the neighboring properties but to no avail. Thompson escaped.

Thompson was arrested several months later and charged with two counts of attempting to obtain a prescription drug by deceit, as a habitual offender, and conspiracy to commit a nonforcible felony. At trial, Thompson's defense was wrong place, wrong time.

Elverton testified on Thompson's behalf. Elverton testified she had stolen prescription pads from a doctor's office a few years prior to this incident. She testified the prescriptions she and Thompson presented were written on the stolen prescription pads and were fraudulent. She

forged the prescriptions to obtain drugs because she had an addiction. According to Elverton, Thompson was only involved because she asked him to help her drop off and pick up prescriptions. She testified she did not tell Thompson there was anything improper about the prescriptions. She testified Thompson did not know the prescriptions were fraudulent. She testified that she pleaded guilty to criminal charges arising out of this incident and that she wanted to clear Thompson of any responsibility.

Elverton's attempt to exculpate Thompson was not credible. For example, Elverton testified she wrote the prescriptions for the two drugs because of her drug addiction, but she could not remember the name of one of the drugs to which she allegedly was addicted and for which she forged a prescription. As another example, one of the prescriptions Elverton forged was for Claudia Williamson, but, when pressed, Elverton testified she had "no clue" who Claudia Williamson was. Also, according to Elverton, Thompson was dropping off prescriptions for Elverton, but Thompson presented the prescription for Williamson without ever asking who Williamson was. (Although not material to our resolution of the issues in this appeal, the presentence investigation report shows Claudia Williamson is Thompson's biological mother.)

The jury found the defendant guilty of all charges. The district court concluded the sentence for the conspiracy offense merged with the sentences for attempt to obtain a prescription drug and sentenced Thompson to a term of incarceration not to exceed fifteen years.

II.

We first address Thompson's evidentiary challenge. Our review is for an abuse of discretion. *See State v. Martin*, 704 N.W.2d 665, 671 (Iowa 2005); *Jensen v. Sattler*, 696 N.W.2d 582, 585 (Iowa 2005). Evidentiary decisions will be given "wide latitude regarding admissibility" so long as

the district court did not ignore the established rules of evidence. *State v. Sallis*, 574 N.W.2d 15, 16 (Iowa 1998).

Because Elverton conceded the prescriptions were forged, the primary issue at trial was whether Thompson knowingly participated in the crime either as a principal or as an aider and abettor. One of the ways in which the State attempted to prove Thompson's knowledge, intent, and motive was to show Thompson gave false residential address information to pharmacy technician Drobushevich. To prove this, the State tried to show the address Thompson gave to Drobushevich was not his address.

The State first called Officer Herve Denain. Denain was dispatched to Walgreens to investigate the incident and create a police report. Denain testified Thompson gave the address 1303 6th Street, DeWitt, when presenting the prescription. Denain stated this address differed from the address Denain entered on the complaint. Denain did not testify how he obtained Thompson's residential address information, specifically, when completing the complaint. But he did testify how he usually obtained residential address information for a defendant when filling out a complaint. When the prosecutor asked Denain the address on the complaint, Denain could not recall. The prosecutor was allowed, over defendant's objection, to refresh Denain's memory by presenting him a copy of the complaint. Denain testified the residential address entered on the complaint was 1303 14th Street, DeWitt. This is the same address as the return address on the envelope Elverton placed in the mail.

The State also tried to prove Thompson gave a false address to the pharmacy technician by showing the address given differed from that on Thompson's written arraignment and plea of not guilty. To lay foundation for the exhibit, the State called a judicial specialist from the clerk of court's office. The written arraignment and plea of not guilty was a form

document. Question two of the form stated, "My name, current mailing and residence addresses, and telephone number are," which was followed by a blank space. The blank space was completed and stated Thompson's mailing and residence addresses were "1303 14th Street, DeWitt, IA 52744." The arraignment was signed by Thompson. The exhibit was admitted over the defendant's objection.

Thompson contends Denain's testimony regarding the address on the complaint and the arraignment form were not relevant. "Iowa has adopted a broad view of relevancy . . . ." *State v. Scott*, 619 N.W.2d 371, 375 (Iowa 2000) (en banc). "Evidence is relevant if . . . [i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. "Whether the necessary minimum level of logical connection between the offered evidence and the fact to be proven exists is a legal question lying within the broad discretion of the trial court." *State v. Tracy*, 482 N.W.2d 675, 680–81 (Iowa 1992) (en banc).

We conclude the district court did not abuse its broad discretion in determining the evidence was relevant and admitting the same over Thompson's objections. The State was required to prove the defendant acted with the specific intent to obtain a prescription drug by deceit either as a principal or as aider and abettor. The unchallenged marshaling instruction provided the State was required to prove the defendant did so by one or more of the following methods: (1) fraud, (2) deceit, (3) misrepresentation, (4) subterfuge, or (5) using a false name or gave a false address. The district court could have reasonably concluded the defendant's provision of the address tended to show the defendant did have the requisite mens rea. The evidence was relevant to show Thompson was living with Elverton and was thus more likely to be in on the fraud. It

also showed Thompson gave false information. He provided the pharmacy technician with the house number "1303" but a street name different than his own. It would be highly coincidental if Thompson and Williamson each resided at house number "1303" but on different streets. The jury was free to infer from this that Thompson provided false address information for himself or false address information for the made-up Williamson.

Thompson implicitly concedes the evidence was relevant. In his brief, Thompson acknowledges the evidence "was low in probative value." Probative value "gauges the strength and force" of relevant evidence. *State v. Cromer*, 765 N.W.2d 1, 8, (Iowa 2009) (quoting *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988) (en banc)). After implicitly conceding the evidence was relevant, Thompson argues the evidence should have been excluded for a variety of reasons. For example, Thompson questions what, specifically, the pharmacy technician asked. He questions how the officer obtained Thompson's residential address information to complete the complaint. Thompson raises the issue of whether the residential address information in the arraignment was the same residential address Thompson had on the day of the offense. These types of objections go to the weight and not the admissibility of the evidence and do not serve as a basis for excluding the evidence. *See De Long v. Brown*, 113 Iowa 370, 373, 85 N.W. 624, 625 (1901) ("[T]he weight to be given to evidence and its admissibility are different matters.").

Thompson also argues the evidence should have been excluded because it was unfairly prejudicial. Iowa Rule of Evidence 5.403, provides relevant evidence may be excluded if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Weighing probative value

against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'" *State v. Putman*, 848 N.W.2d 1, 10 (Iowa 2014) (quoting *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006)).

We reject Thompson's argument that the evidence was unfairly prejudicial. Thompson argues the evidence was unfairly prejudicial "because it was the only evidence offered to show Mr. Thompson had any knowledge [Elverton] was acting in fraud." Thompson misapprehends the nature of the inquiry. All "[r]elevant evidence is inherently prejudicial in the sense of being detrimental to the opposing party's case." *State v. Delaney*, 526 N.W.2d 170, 175 (Iowa Ct. App. 1994). The relevant inquiry is not whether the evidence is prejudicial or inherently prejudicial but whether the evidence is unfairly prejudicial. Unfairly prejudicial means the "evidence has an undue tendency to suggest a decision on an improper basis." *Id.* The evidence here does not suggest a decision on an improper basis.

Given the latitude afforded the district court in matters of evidence, we cannot conclude the district court abused its broad discretion in admitting the evidence over the defendant's objection.

III.

A.

The constitutional question in this case involves filing and motion practice in this court. Thompson is represented by counsel in this appeal. Nonetheless, Thompson filed his own brief in addition to the brief filed by counsel. The Iowa Rules of Appellate Procedure allow a represented party to file a pro se supplemental brief. *See* Iowa R. App. P. 6.901(2) (setting forth rules regarding pro se supplemental briefs). Thompson's counsel

filed a motion requesting this court accept Thompson's pro se supplemental brief for filing.

The State filed a resistance to Thompson's pro se supplemental brief. In its resistance, the State contended a recently-enacted law now prohibits a represented party from filing any pro se document in any Iowa court. *See* 2019 Iowa Acts ch. 140, § 30 (codified at Iowa Code § 814.6A) (2020).[1] The new law provides:

> A defendant who is currently represented by counsel shall not file any pro se document, including a brief, reply brief, or motion, in any Iowa court. The court shall not consider, and opposing counsel shall not respond to, such pro se filings.

Iowa Code § 814.6A(1). The State requested this court strike Thompson's pro se supplemental brief pursuant to section 814.6A.

We ordered the motion and resistance be submitted with this appeal and ordered the parties to brief the issue. In their briefing, the parties contest the constitutionality of the new legislation. Thompson contends the new statute violates the separation-of-powers doctrine and is therefore unconstitutional and void. The State contends the new statute is a proper exercise of the legislative department's constitutional authority to regulate practice and procedure in Iowa's courts. Because the specific issue in this case is whether the court is required to strike Thompson's pro se supplemental brief, we focus our inquiry on the constitutionality of the law as applied in this appeal.[2]

---

[1]The law provides an exception and allows a represented party to file a motion to disqualify counsel. *See* Iowa Code § 814.6A(3).

[2]The dissent contends section 814.6A has "constitutional problems" because the law prohibits the filings of briefs pursuant to *Anders v. California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967), and Iowa Rule of Appellate Procedure 6.1005. Given the doctrine of constitutional avoidance, we doubt section 814.6A would prohibit the filing of *Anders* briefs. Even if it did, however, the "constitutional problem" presented would be in the nature of due process and not separation of powers. Regardless, we need not and do not answer these questions today. This case does not involve an *Anders* brief, and neither party raised or briefed the issue. The dissent's search for reasons to declare

B.

Where, as here, the separation-of-powers question arises out of proceedings in this court, "this court shall make its own evaluation, based on the totality of circumstances, to determine whether that power has been exercised appropriately." *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 872 (Iowa 1978) (en banc). "Because statutes are cloaked with a strong presumption of constitutionality, a party challenging a statute carries a heavy burden of rebutting this presumption." *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002). "[T]he party must show beyond a reasonable doubt that a statute violates the constitution." *Id.*

C.

"The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *State v. Barker*, 116 Iowa 96, 108, 89 N.W. 204, 208 (1902). The "historic concept of separation of powers to safeguard against tyranny" is memorialized in the Iowa

section 814.6A unconstitutional is contrary to the adversarial process. "[O]ur system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, ___ U.S. ___, ___, 140 S. Ct. 1575, 1579 (2020) (second alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386, 124 S. Ct. 786 (2003) (Scalia, J., concurring in part and concurring in judgment)). "[C]ourts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." *Id.* (alterations in original) (citation omitted) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring)). The dissent's search for reasons to declare this statute unconstitutional is also contrary to this court's long-standing approach to the resolution of constitutional questions. *See McGuire v. Chi., B. & Q.R. Co.*, 131 Iowa 340, 348, 108 N.W. 902, 905 (1906), *aff'd*, 219 U.S. 549, 31 S. Ct. 259 (1911) ("While it is an imperative duty, from which no court will shrink, to declare void any statute the unconstitutionality of which is made apparent, due regard to the boundary between the legislative and judicial departments of our government requires that this prerogative be exercised with the greatest caution, and only after every reasonable presumption has been indulged in favor of the validity of the act.").

Constitution. *Webster Cnty. Bd. of Supervisors*, 268 N.W.2d at 873. The constitution provides:

> The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, § 1.

The separation-of-powers doctrine has at least three aspects. First, the doctrine prohibits a department of the government from exercising "powers that are clearly forbidden" to it. *Klouda*, 642 N.W.2d at 260 (quoting *State v. Phillips*, 610 N.W.2d 840, 842 (Iowa 2000) (en banc)). Second, the doctrine prohibits one department of the government from exercising "powers granted by the constitution to another branch." *Id.* Third, "[e]ach department of government must be and remain independent if the constitutional safeguards are to be maintained." *Webster Cnty. Bd. of Supervisors*, 268 N.W.2d at 873. Stated differently, one department of the government cannot "impair another in the performance of its constitutional duties." *Klouda*, 642 N.W.2d at 260 (emphasis omitted).

### 1.

We first address the question of whether the enactment of section 814.6A violates the first two aspects of the separation-of-powers doctrine. That is, whether the legislative department exercised "powers that are clearly forbidden" to it or exercised "powers granted by the constitution to another branch." *Klouda*, 642 N.W.2d at 260. In answering the question, "we first look to the words used by our framers to ascertain intent and the meaning of our constitution and to the common understanding of those words." *Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 851 (Iowa 2014); *see also Allison v. State*, 914 N.W.2d 866, 884 (Iowa 2018) ("Lawyers and

judges who believe constitutional text matters must give the additional Iowa constitutional language its full meaning."). We look at the "text of the document through the prism of our precedent, tradition, and custom." *State v. Brown*, 930 N.W.2d 840, 861 (Iowa 2019) (McDonald, J., concurring specially); *see also The Federalist No. 37*, at 179 (James Madison) (Garry Wills ed., 1982) (stating legal meaning must "be liquidated and ascertained by a series of particular discussions and adjudications").

The constitutional duty of the judicial department is to exercise the judicial power to provide for the fair and impartial administration of justice. The constitution vests the judicial power in the "supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may, from time to time, establish." Iowa Const. art. 5, § 1. "The judicial power is ordinarily defined to be the power to construe and interpret the Constitution and laws, and to apply them and decide controversies . . . ." *Hutchins v. City of Des Moines*, 176 Iowa 189, 205, 157 N.W. 881, 887 (1916). It "is the power to decide and pronounce a judgment and carry it into effect." *Klouda*, 642 N.W.2d at 261.

The power of appellate review is one aspect of the judicial power. It is the power of an appellate court to correct legal error in the lower courts. The power of appellate review is vested in this court by the constitution. *See* Iowa Const. art. V, § 1 (stating the supreme court "shall have appellate jurisdiction only in cases of chancery, and shall constitute a court for the correction of errors at law"). The power of appellate review is vested in the court of appeals by statute. *See* Iowa Code §§ 602.5101 (establishing the Iowa Court of Appeals "as an intermediate court of appeals"), .5103(1) ("The court of appeals has appellate jurisdiction only in cases in chancery, and constitutes a court for the correction of errors at law."). To execute these powers, Iowa's appellate courts have the power to issue all writs and

process necessary to exercise and enforce their jurisdiction and to secure justice to the parties. *See* Iowa Const. art. V, § 1 (regarding the supreme court); Iowa Code § 602.5103(4) (regarding the court of appeals).

The judicial department has several fonts of authority to regulate court practice and procedure in all Iowa courts. The judicial department has *constitutional* authority to supervise and administer "all inferior judicial tribunals throughout the state." Iowa Const. art. V, § 4. The judicial department has *statutory* authority to "prescribe all rules of pleading, practice, evidence, and procedure, and the forms of process, writs, and notices, for all proceedings in all courts of this state." Iowa Code § 602.4201(1). The judicial department possesses *inherent* authority to craft protocols and procedures in its courts. *See State v. Dahl*, 874 N.W.2d 348, 353 (Iowa 2016) (exercising supervisory authority to create protocol for appointment of a private investigator for an indigent defendant); *see also Hammon v. Gilson*, 227 Iowa 1366, 1373, 291 N.W. 448, 451–52 (1940) ("[C]ourts have the inherent power to prescribe such rules of practice . . . to facilitate the administration of justice . . . ."). Moreover, the judicial department possesses *residual common law* authority to meet its "independent constitutional and statutory responsibilities." *Iowa C.L. Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976) (en banc).

However, the constitutional text reserves to the legislative department authority to regulate the practice and procedure in all Iowa courts, including Iowa's appellate courts. Article V, section 4 of the Iowa Constitution grants the supreme court appellate jurisdiction "under such restrictions as the general assembly may, by law, prescribe." Article V, section 6 provides the district court shall have jurisdiction "as shall be prescribed by law." And article V, section 14 of the constitution provides it is "the duty of the general assembly . . . to provide for a general system

of practice in all the courts of this state." The judicial department's constitutional, statutory, inherent, and common law authority to regulate practice and procedure in its courts thus must give way where the legislative department has acted. *See* Iowa Const. art. V, § 14; Iowa Code § 602.4202(4) ("If the general assembly enacts a bill changing a rule or form, the general assembly's enactment supersedes a conflicting provision in the rule or form as submitted by the supreme court."); *Critelli*, 244 N.W.2d at 569. In short, the constitutional text supports the State's position that the legislative department has the authority to prohibit the filing of pro se supplemental briefs on appeal.[3]

Historical practice also supports the conclusion that the legislative department has the authority to prohibit the filing of pro se supplemental briefs. Practice and procedure in Iowa's courts historically has been governed by the legislative department through statutes rather than by the judicial department through court rules.

For example, in the Code of 1860, the legislative department enacted a complete Code of Civil Practice and Code of Criminal Practice. *See* 1860 Iowa Code, Code Editor's Preface (discussing wholly new codes of civil and criminal practice); Part III, Of the Courts and the Procedure Therein; Part IV, Of Crimes and Punishments, and Proceedings in Criminal Cases. The Codes of Civil Practice and Criminal Practice were plenary, regulating every aspect of practice and procedure in all Iowa courts. Iowa Code § 4424 (1860) ("The provisions of this act shall regulate the proceedings in all

---

[3]The dissent recognizes the text of our constitution grants the legislature the power to regulate practice and procedure in all Iowa courts. The dissent contends this grant of power is not exclusive, citing *Critelli*. We agree the legislature does not have exclusive authority to regulate practice and procedure in all Iowa courts. Where, however, the legislature's exercise of constitutional authority conflicts with this court's common law powers, the legislative power prevails. *See Critelli*, 244 N.W.2d at 569 (stating courts have the power adopt rules "[w]here the legislature has not acted"). The dissent disregards this qualifying language in *Critelli*.

prosecutions in all the courts of this state from and after the first day of September, A.D., 1860."). The code included direct regulation of the conduct of the supreme court. The code directed where the supreme court shall hold court. *See id.* § 2623. The code directed how many terms the supreme court shall hold and when each of those terms is to commence. *See id.* § 2624. The code directed how many judges shall constitute a quorum to transact business. *See id.* § 2627. The code defined this court's appellate jurisdiction. *See id.* §§ 2631, 2632. The legislative department specifically directed how opinions must be decided and filed, providing all opinions of the court, including dissenting opinions, must be reduced to writing and filed with the clerk of court. *See id.* §§ 2636, 2637.

While early code provisions did provide this court with the authority to make rules of procedure in civil matters, the rule making power was to "carry out the general spirit and intent of the system of practice" the legislature adopted and to "carry out the purposes of the statute." Iowa Code §§ 1588–1591 (1851). The court's statutory rulemaking power was thus an interstitial power to fill in gaps in the legislative department's statutory edifice. This was widely understood to be the constitutional division of powers between the two departments with respect to governing practice and procedure in Iowa's courts. *See* Note, *Judicial Rule Making: Propriety of Iowa Rule 344(f)*, 48 Iowa L. Rev. 919, 925 (1963) [hereinafter *Judicial Rule Making*] ("On the contrary, the court has felt that it could not promulgate comprehensive rules without legislative authority."); James McCauley Stewart, *Rules of Court in Iowa*, 13 Iowa L. Rev. 398, 402 (1928) ("It would seem then, that if the courts of this state are to enjoy rule-making power they must seek legislative authority for so doing."). For example, in 1928 the Iowa State Bar Association rejected a proposal for the enactment of a statute for this court to make rules of pleading and

practice on the ground, among others, the Iowa Constitution reserves this authority to the legislative department. *See* Iowa State Bar Ass'n, *Proceedings of the Thirty-Fourth Annual Meeting of the Iowa State Bar Association, 1928, Report on the Committee of Law Reform* 103–07.

This was the state of affairs until the 1930s. In 1934, Congress passed an act delegating to the Supreme Court the power to prescribe rules of civil procedure. *See* Act of June 19, 1934, Pub. L. No. 73-415, 48 Stat. 1064 (1934). The power to promulgate rules of criminal procedure was conferred by the Act of June 29, 1940. *See* Pub. L. 76-675, 54 Stat. 688 (1940). Both acts are now codified under 28 U.S.C. § 2072 (2018). Following the federal model, in 1941, the general assembly enacted a statute authorizing this court to prescribe all rules of pleading, practice, and procedure for all proceedings of a civil nature. *See* 1941 Iowa Acts ch. 311 (codified at Iowa Code §§ 684.18, .19 (1946)). The legislation directed this court to report any proposed rules to the general assembly, and, subject to legislative revision, the proposed rules would take effect following the adjournment of the legislature. *Id.* ch. 311, § 2 (codified at Iowa Code § 684.19 (1946)). The legislature continued to expand this court's rulemaking authority over the years. The legislature gave this court the authority to enact criminal rules of procedure in 1976 and rules of evidence in 1981. *See* 1976 Iowa Acts ch. 1245, ch. 2, § 1303 (codified at Iowa Code § 813.4) (Supp. 1977)); 1981 Iowa Acts ch. 203 (codified at Iowa Code § 681.18 (1983)). This statutory division of authority has remained largely unchanged with two exceptions. First, between 1946 and 1983, this court's rules were actually in the code or appended to the end of the code as session laws. That practice changed in 1982–83. *See* 1982 Iowa Acts ch. 1061, § 4 (codified at Iowa Code § 14.12(7) (1983)); 1983 Iowa Code, Code Editor's Note, at 3667 (explaining court rules shall be

omitted from the Iowa Code). Second, in 1983, the legislature amended the code to specify that this court only had to report rule changes to the legislative council and the chairs and ranking members of the house and senate judiciary committees rather than the entire general assembly. *See* 1983 Iowa Acts ch. 186, §§ 5201, 5202 (codified at Iowa Code §§ 602.4201, .4202 (1983 Supp)).

Even with the legislative delegation of rulemaking power to this court, practice and procedure in Iowa's courts remain a mix of statutes and rules. As relevant here, the legislative department continues to legislate on the topics of who can participate in judicial proceedings, what information or evidence can be presented in judicial proceedings, and what information or evidence can be considered in judicial proceedings. Consider just a sentencing proceeding—the quintessential judicial function. The legislature prohibits sentencing courts from ordering or considering a presentence investigation report when conducting sentencing for a class "A" felony. *See* Iowa Code § 901.2(2)(*a*) (2019). The legislature requires district courts to order a presentence investigation report when sentencing for class "B," "C," and "D" felonies. *See id.* § 901.2(2)(*b*). The legislative department requires sentencing courts to examine presentence investigations prior to determining sentence. *See id.* § 901.5 unnumbered para. 1. At the time of sentencing, the legislature has directed that "the court shall consider the provisions of 21 U.S.C. § 862, regarding the denial of federal benefits to drug traffickers." *Id.* § 901.5(10). At the time of sentencing for particular offenses, the legislature provides the district shall consider a validated risk assessment. *See id.* § 901.11. In youthful offender review proceedings, the legislative department has instructed courts "shall hear evidence by or on behalf of the youthful offender, by the county attorney, and by the person or agency

to which custody of the youthful offender was transferred." *Id.* § 907.3A(2). The same provision directs the district court to consider particular information when making its decision. *See id.* With respect to victims, the legislative department has determined that victims have the right to participate in sentencing proceedings. *See id.* § 915.21. It has determined how victim impact statements can be presented to the sentencing court. *See id.* § 915.21(1)(*a*)–(*e*). The legislative department has determined that the victim's attorney or designated representative shall have the right to make a statement in lieu of the victim. *See id.* § 915.21(1)(*e*). The legislative department has also instructed courts how to treat victims, directing that "[a] victim shall not be placed under oath and subjected to cross-examination at the sentencing hearing." *Id.* § 915.21(3). These are just examples. Iowa Code Title XVI (Criminal Law and Procedure), Subtitle 3 (Criminal Corrections) is littered with musts and must nots and shalls and shall nots that directly regulate the practice and procedure in district courts. None of these enactments have been held to contravene the constitutional separation of powers.

This brief survey of the relevant history shows the legislative department has always established the rules for practice and procedure in Iowa's courts. Initially, the legislature did so directly through statutes. More recently, the legislature has done so indirectly through delegation of the rulemaking power to this court subject to legislative oversight and amendment. Pursuant to this historical practice, this court has repeatedly recognized the constitutionality of legislation regulating practice and procedure in Iowa's courts. In *State v. Olsen*, we recognized the legislative department could set the deadlines by which a party could seek appellate review. 180 Iowa 97, 99–100, 162 N.W. 781, 782–83 (1917). In doing so, we stated, "The right of appeal is purely statutory. To invoke the appellate

jurisdiction of this court, the statute must be followed." *Id.* at 99, 162 N.W. at 782. In *Andrews v. Burdick*, we rejected an argument that the legislative department could not restrict the appellate power in cases involving an amount less than one hundred dollars. 62 Iowa 714, 721, 16 N.W. 275, 279 (1883). In *Root v. Toney*, we recognized "the legislature's limited role in our appellate process includes the power to prescribe by statute the time allowed to file an appeal and to provide for a one-day extension when the deadline falls on a day our clerk of court is closed in whole or in part." 841 N.W.2d 83, 87 (2013). And in *Wine v. Jones*, we held the legislative department did not violate the separation of powers when it prohibited this court from requiring the parties to file an assignment of error. 183 Iowa 1166, 1177–78, 168 N.W. 318, 321 (1918). We reasoned that the statute passed constitutional muster because it merely prohibited the filing of a pleading but did "not undertake to prescribe the manner of arguing errors complained of, in presenting a cause to this court." *Id.* at 1178, 168 N.W. at 321.

The constitutional grant of authority to the legislative department to provide for a general system of practice in Iowa's courts and historical practice distinguishes this case from the *Klouda v. Sixth Judicial District Department of Correctional Services* decision on which Thompson relies. *Klouda* involved a challenge to a statute that "create[d] a pilot project in the sixth judicial district whereby judges in that district transfer[red] jurisdiction over probation revocation cases to an administrative parole and probation judge (ALJ)." 642 N.W.2d at 257. We concluded the statute violated the separation-of-powers doctrine and was unconstitutional. *See id.* at 263. In reaching the conclusion, we explained that "sentencing . . . falls within the realm of judicial power." *Id.* at 261. We explained that the statute was unconstitutional because it vested executive department

administrative law judges with substantive sentencing power exclusively vested in the judicial department. *See id.* at 263. *Klouda* is a case that involved the divestment of the judicial sentencing power from the courts and the transfer of that power to another branch of government. That transfer of power violated the first and second aspects of the separation-of-powers doctrine. That case is not this case. Here, the statute does not divest this court of any power and transfer the same to a coordinate branch of government.

In light of the foregoing, it is apparent Thompson has not carried his heavy burden of showing beyond a reasonable doubt the legislative department did, in prohibiting represented parties from filing pro se supplemental briefs on appeal, exercise "powers that are clearly forbidden" to it or exercise "powers granted by the constitution to another branch." *Klouda*, 642 N.W.2d at 260. The constitution explicitly vests the legislative department with the power "to provide for a general system of practice in all the courts of this state." Iowa Const. art. V, § 14. Pursuant to this grant of constitutional authority, the legislative department has exercised and continues to exercise regulatory authority over practice and procedure in Iowa's courts. This historical practice is of great significance in determining separation-of-powers questions:

> To be sure, the content of the three authorities of government is not to be derived from an abstract analysis. The areas are partly interacting, not wholly disjointed. The Constitution is a framework for government. Therefore the way the framework has consistently operated fairly establishes that it has operated according to its true nature. Deeply embedded traditional ways of conducting government cannot supplant the Constitution or legislation, but they give meaning to the words of a text or supply them.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610, 72 S. Ct. 863, 897 (1952) (Frankfurter, J., concurring). Pursuant to the constitutional

text and historical practice, our precedents continue to recognize the "legislature possesses the fundamental responsibility to adopt rules of practice for our courts." *Butler v. Woodbury Cnty.*, 547 N.W.2d 17, 20 (Iowa Ct. App. 1996).

2.

This brings us to the third aspect of the separation-of-powers question—whether section 814.6A impedes the immediate, necessary, efficient, and basic functioning of our appellate courts. At the same time we have honored the legislative department's fundamental responsibility to regulate practice and procedure in Iowa's courts, we have also recognized the legislative department's authority is not unlimited. Under the guise of regulation, the "[l]egislature cannot exercise judicial powers and cannot reverse, vacate, or overrule the judgment or decree of a court." *Wilcox v. Miner*, 201 Iowa 476, 478, 205 N.W. 847, 848 (1925). Nor can the legislature "arbitrarily decree that courts are without subject matter jurisdiction in a certain class of cases then pending in the courts." *Schwarzkopf v. Sac Cnty. Bd. of Supervisors*, 341 N.W.2d 1, 6 (Iowa 1983). Nor can the legislative department "change the character of the court" such that it shall be something other "than 'a court for the correction of errors at law.'" *Wine*, 183 Iowa at 1177, 168 N.W. at 321. Ultimately, "[f]or the judiciary to play an undiminished role as an independent and equal coordinate branch of government nothing[, including the legislative department,] must impede the immediate, necessary, efficient and basic functioning of the courts." *Webster Cnty. Bd. of Supervisors*, 268 N.W.2d at 873.

Thompson argues section 814.6A impairs the essential function of the appellate courts because the new law violates a defendant's right to present legal claims on appeal. Contrary to Thompson's assertion, there

is no independent right that requires a represented party be allowed to file pro se documents on appeal. Iowa Rule of Appellate Procedure 6.901(2) allowed a criminal defendant or applicant for postconviction relief to file a pro se supplemental brief. That was allowed, however, as a matter of grace. There is no constitutional right to hybrid representation on direct appeal from a criminal conviction or on appeal from a postconviction relief proceeding. *See United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012) ("Pro se litigants have no right to 'hybrid representation' because '[a] defendant does not have a constitutional right to choreograph special appearances by counsel.'" (alternation in original) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 953 (1984)).

The United States Court of Appeals for the Third Circuit explained:

> Even were this not the case, Fontanez's claims fail substantively. The thrust of his complaint concerns a Pennsylvania litigant's right to represent himself on appeal. But there is no such right under the federal constitution. Although such a right does exist at the trial level, the United States Supreme Court has made clear that this right does not extend to appeals. And rules limiting hybrid representation (in which a litigant proceeds simultaneously by counsel and pro se) are constitutionally acceptable in both the appellate and trial contexts.

*Fontanez v. Pennsylvania*, 570 F. App'x 115, 116 (3d Cir. 2014) (per curiam) (citations omitted).

Other courts that have considered the issue agree there is no constitutional right to hybrid representation on appeal. *See United States v. Hunter*, 932 F.3d 610, 620 (7th Cir. 2019) (stating "there is no Sixth Amendment right to file a pro se brief when the appellant is represented by counsel" (quoting *Hayes v. Hawes*, 921 F.2d 100, 102 (7th Cir. 1990) (per curiam))); *United States v. Montgomery*, 592 F. App'x 411, 415 (6th Cir. 2014) ("Accordingly, we have stated that there is no 'constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition

to the brief submitted by appointed counsel.' " (quoting *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000))); *United States v. Washington*, 743 F.3d 938, 941 n.1 (4th Cir. 2014) (stating a party has no right to raise substantive issues while represented by counsel); *Trimble v. State*, 157 So.3d 1001, 1006 (Ala. Crim. App. 2014) (stating "courts in other jurisdictions have held that a defendant is not entitled to file pro se pleadings or motions when represented by counsel" and citing cases); *Brewer v. State*, 268 S.W.3d 332, 333 (Ark. 2007) (per curiam) ("An appellant is not entitled to accept appointment of counsel to represent him, and also proceed pro se.  Moreover, this court will not permit an appellant to compete with his attorney to be heard in an appeal." (citation omitted)); *Eagle v. State*, 440 S.E.2d 2, 5 (Ga. 1994) (declining to address arguments in pro se brief and stating "[n]either our State Constitution nor the Federal Constitution provide a defendant with a right to simultaneous representation by counsel and self-representation"); *LeBaron v. Commonwealth*, 985 N.E.2d 822, 822 (Mass. 2013) (stating the defendant had no constitutional right to file pro se documents on appeal); *People v. White*, 539 N.E.2d 577, 583 (N.Y. 1989) ("Indeed, good appellate practice might require a retained attorney to take a different approach from that urged by the client when experience has proven that the attorney's approach is in the client's best interest.  Thus, we see no reason why the rule that defendant has no right to hybrid representation at the pretrial and trial stages should not carry over to the appellate stage."); *Commonwealth v. Blakeney*, 108 A.3d 739, 762 (Pa. 2014) (per curiam) ("Indeed, no defendant has a constitutional right to hybrid representation, either at trial or on appeal."); *Jones v. State*, 558 S.E.2d 517, 517 (S.C. 2002) ("There is no constitutional right to hybrid representation either at trial or on appeal."); *Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim.

App. 2006) (declining to address arguments in pro se brief on the ground "appellant has no right to hybrid representation"); *State v. Debra A.E.*, 523 N.W.2d 727, 737 (Wis. 1994) (stating a "a defendant does not have a constitutional right to hybrid representation on appeal or review" and collecting cases). To the best of our knowledge, no court has reached a contrary conclusion.

We cannot conclude section 814.6A, as applied to appellate courts, impedes the essential functioning of the appellate courts. The statute does not divest the appellate courts of judicial power. Nor does the statute transfer judicial power to another department of the government. The statute does not direct the appellate courts how to decide a particular case. The statute does not change the character of the appellate courts to something other than courts for the correction of errors at law. The statute does not deprive the defendant of any fundamental right. Section 814.6A does not cross any of the constitutional lines demarcated in our cases. As in *Wine*, the statute simply prohibits certain documents from being filed in the appellate courts.

The fact that section 814.6A also provides the courts "shall not consider . . . such pro se filings" does not change the constitutional calculus. The "shall not consider" language is not of independent constitutional consequence. As a practical matter, the court cannot consider any document not accepted for filing. The "shall not consider" language is merely tautological surplusage. As Justice Scalia and Bryan Garner explained, "Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012) (emphasis in original). This

fact, they warned, counseled against rigid application of the surplusage canon. *See id.* ("So like all other canons, this one must be applied with judgment and discretion, and with careful regard to context. It cannot always be dispositive because . . . the underlying proposition is not *invariably* true." (emphasis in original)). Here, context demonstrates the "shall not consider" language is a belt-and-suspenders approach. The statutory language simply mirrors Iowa Rule of Appellate Procedure 6.901(2), which provides untimely pro se supplemental briefs "will not be considered by the court." The legislature's use of mirroring language to extend our rule prohibiting the consideration of untimely pro se supplemental briefs to all pro se supplemental briefs is a quite common belt-and-suspenders approach and does not evidence any intent to impede the essential function of the appellate courts. *See* Ethan J. Leib & James J. Brudney, *The Belt-and-Suspenders Canon,* 105 Iowa L. Rev. 735, 738, 742 (2020) (explaining it is common for legislative drafters to employ a redundant belt-and-suspenders approach in drafting legislation and "[e]ven more broadly, legislatures may opt for redundant drafting in relation to previously enacted statutes").

Section 814.6A is merely another example of the legislative department's constitutional and historical prerogative to regulate practice and procedure in Iowa's courts. There are legitimate regulatory reasons why the legislature would seek to restrict represented parties from filing pro se documents on appeal. Requiring that briefs be filed only by counsel "ensure[s] that counsel and client speak with one voice." *Turner,* 677 F.3d at 579. "When a client seeks to raise additional issues, counsel must evaluate them and present only the meritorious ones, rather than simply seeking leave for the client to file a supplemental brief. This promotes effective advocacy because it prevents counsel from allowing frivolous

arguments to be made by the client." *Id.* The prohibition against represented parties also reduces procedural confusion. *See Montgomery*, 592 F. App'x at 416 ("Indeed, the prohibition against hybrid representation is intended to prevent the exact type of procedural confusion presented in this appeal."). The legislative department's decision to advance these interests does not impede the immediate, necessary, efficient, and basic functioning of our appellate courts.

D.

The demarcation between a legitimate regulation of court practice and procedure and an unconstitutional encroachment of the judicial power is context specific. "The separation-of-powers doctrine . . . has no rigid boundaries." *Klouda*, 642 N.W.2d at 260. In this specific context, we hold section 814.6A, as applied to prohibit the filing of pro se supplemental briefs on appeal, does not violate any aspect of the separation-of-powers doctrine. *See id.*; *Webster Cnty. Bd. of Supervisors*, 268 N.W.2d at 873. It is the legislative department's constitutional prerogative to establish a general system of practice in all Iowa courts so long as those restrictions and regulations do not impede the immediate, necessary, efficient, or basic functioning of the appellate courts. Section 814.6A, as applied to pro se supplemental briefs on appeal, does not impede the immediate, necessary, efficient, or basic functioning of the appellate courts. Instead, section 814.6A merely restricts represented parties from filing documents in the appellate courts and thus regulates the manner in which legal claims and arguments can be presented to the appellate courts for resolution. The legislature has exercised its constitutional power to decide that the claims and arguments of all represented parties on appeal should be advanced by counsel rather than the litigants. This does not offend the separation-of-powers doctrine. The

new legislation thus supersedes Iowa Rule of Appellate Procedure 6.901(2). *See* Iowa Code § 602.4202(4); *Judicial Rule Making*, 48 Iowa L. Rev. at 924 (explaining Iowa's "judicial rules will be invalid when in conflict with a statute").[4]

### IV.

For these reasons, we affirm Thompson's convictions for attempting to obtain a prescription drug by deceit. We reject Thompson's constitutional challenge to Iowa Code section 814.6A. Thompson's motion to accept his pro se supplemental brief is denied. The clerk of the supreme court is directed to strike the pro se supplemental brief.

**CONVICTIONS AFFIRMED.**

Waterman, Mansfield, and Oxley, JJ., join this opinion. McDermott, J., files a separate opinion concurring in part and dissenting in part in which Christensen, C.J., and Appel, J., join.

---

[4]"In for a calf is not always in for a cow." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 358, 115 S. Ct. 1511, 1524 (1995) (Ginsburg, J., concurring). The dissent raises hypotheticals that are not before us and that we need not address to resolve the actual question presented. While we conclude section 814.6A is constitutional on its face and as applied in this appeal, we agree there are constitutional limits to the legislative department's authority to regulate practice and procedure in Iowa's courts.

**McDERMOTT**, **Justice (concurring in part and dissenting in part).**

The legislature's statute challenged in this appeal erases the court's own long-standing appellate rule inviting pro se supplemental briefs from criminal defendants. By its language, Iowa Code section 814.6A (2020) forbids a represented defendant from filing "any pro se document . . . in any Iowa court" and commands that the "court shall not consider . . . such pro se filings." The constitutional question the statute provokes is simply stated: Does the legislature violate the separation of powers by passing a law that denies the court the opportunity to *request* and *consider* a pro se criminal defendant's own filings in cases properly before the court?

The Iowa Constitution establishes the "Jurisdiction of supreme court" and assigns to the supreme court the power to provide for "the correction of errors at law" and to "issue all writs and process necessary to secure justice to parties." Iowa Const. art. V, § 4. As the majority recites, the judicial powers enumerated in the constitution thus encompass "the power to decide and pronounce a judgment and carry it into effect." *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 261 (Iowa 2002). Like the United States Constitution, the Iowa Constitution embraces separation of powers between legislative, executive, and judicial departments, and the powers of each were to remain distinct: "[N]o person charged with the exercise of powers properly belonging to one of these departments shall exercise *any function* appertaining to either of the others, except in cases hereinafter expressly directed or permitted." Iowa Const. art. III, Three Separate Departments, § 1 (emphasis added).

The separation of powers among the three branches preserves the balance established in the constitution to prevent "a gradual concentration of the several powers in the same department." *The Federalist No. 51*, at

349 (James Madison) (Jacob E. Cooke ed., 1961). Under the separation of powers, the judicial branch holds "the 'province and duty . . . to say what the law is' in particular cases and controversies." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218, 115 S. Ct. 1447, 1453 (1995) (alteration in original) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). Courts "derive from the Constitution itself, once they have been created and their jurisdiction established, the authority to do what courts have traditionally done in order to accomplish their assigned tasks." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 58, 111 S. Ct. 2123, 2140 (1991) (Scalia, J., dissenting).

The majority correctly recites that the Iowa Constitution provides this court jurisdiction "under such restrictions as the General Assembly may, by law, prescribe." Iowa Const. art. V, § 4. But determinations of who may file documents with the courts to enable the courts to do their work on a pending case, and the sources from which the courts may consider arguments, isn't a question of court *jurisdiction.* The challenged statute doesn't grant or deprive any court of jurisdiction to hear a case. And there's certainly no suggestion criminal cases like this one aren't properly before the court.

The majority also correctly recites that the Iowa Constitution directs the legislature "to provide for a general system of practice in all the courts of this state." Iowa Const. art. V, § 14. Contrary to the majority's claim, this "general system" provision does *not* bestow upon the legislature exclusive power to adopt the court's rules of practice. In *Iowa Civil Liberties Union v. Critelli*—a case cited by the majority—we recognized the

courts' fundamental power to adopt rules of practice to fulfill the courts' constitutional duties:

> We do not think the constitutional assignment of a duty to the legislature to provide a general system of practice for the courts vests the power to adopt rules of practice in the legislature exclusively. Where the legislature has not acted, courts possess a residuum of inherent common-law power to adopt rules to enable them to meet their independent constitutional and statutory responsibilities. We find Article V, § 14, of the Constitution, read with the separation of powers clause, Article III, § 1, does not manifest a plain intention to abrogate the inherent common-law power of courts to adopt rules of practice.

244 N.W.2d 564, 569 (Iowa 1976) (en banc).

At common law, the inherent power of courts to make rules governing practice and procedure "was firmly established." *Id.* at 568. In *Hammon v. Gilson,* we upheld a court's procedural order under "the recognized rule that courts have the inherent power to prescribe such rules of practice and rules to regulate their proceedings . . . to facilitate the administration of justice." 227 Iowa 1366, 1373, 291 N.W. 448, 451–52 (1940). We see the legislature's implicit recognition of this power in the Iowa Code. Iowa Code section 602.4201(1) provides that the "*supreme court* may prescribe all rules of pleading, practice, evidence, and procedure, and the forms of process, writs, and notices, for all proceedings in all courts of this state." (Emphasis added.) Section 602.6101 states that the "*district court* has all the power usually possessed and exercised by trial courts of general jurisdiction, and is a court of record," and we've previously said adopting a rule of practice is such a power. *Id.* § 602.6101 (emphasis added); *Critelli,* 244 N.W.2d at 569.

As the majority notes, section 602.4202(1) also puts in place a rulemaking procedure requiring that the supreme court submit a prescribed rule of practice to the legislative counsel and report the rules

to the chairs and ranking members of the judiciary committees in both chambers of the legislature. Iowa Code § 602.4202(1). And as the majority notes, if the general assembly enacts a bill changing a rule, that enactment supersedes a conflicting provision in the supreme court's proposed rule. *Id.* § 602.4202(4).

But section 602.4202 doesn't apply to *all* rules of appellate procedure. Instead, the legislature carved out a small subset of rules that the legislature makes subject to its oversight: rules 6.101 through 6.105, 6.601 through 6.603, and 6.907. *Id.* § 602.4201(3)(*d*). Not among them is the rule that addresses pro se supplemental briefs, residing in rule 6.901(2). Stated differently, the legislature only included nine numbered rules in those it made subject to the legislative notice requirements of section 602.4202, leaving for the supreme court to adopt all other appellate rules. *See* Iowa R. App. P. 6.1301(2) ("The amendment of all other appellate rules shall be by court order and shall take effect at such time as the court prescribes.").

The majority's claim that the challenged statute "simply mirrors" the court's own appellate rule 6.901(2) when it commands courts "shall not consider" pro se briefs blurs two very different concepts. Let's be clear: Rule 6.901(2) expressly *permits* pro se supplemental briefs. Iowa R. App. P. 6.901(2)(*a*). Those briefs, like virtually all briefs, must be filed by a prescribed deadline. Rule 6.901(2)(*a*) simply says that pro se supplemental briefs submitted beyond the deadline "will not be considered." Only in a funhouse mirror could the challenged statute that prohibits *any* filing of a pro se supplemental brief and *any* consideration of it mirror rule 6.901(2), which *invites* a timely pro se supplemental brief from a criminal defendant and *permits* the court's consideration of it.

The "three aspect" separation-of-powers analysis the majority stitches from some of our prior cases strikes me as overwrought. The separation-of-powers doctrine is violated if one branch of government seeks to use powers granted by the constitution to another branch. *See State v. Phillips*, 610 N.W.2d 840, 842 (Iowa 2000) (en banc). The analysis requires two basic inquiries: what type of power is being exercised, and which branch is exercising it. *See id.*; *see also Morrison v. Olson*, 487 U.S. 654, 705, 108 S. Ct. 2597, 2626 (1988) (Scalia, J., dissenting); Martin H. Redish & Elizabeth J. Cisar, *"If Angels Were to Govern": The Need for Pragmatic Formalism in Separation of Powers Theory*, 41 Duke L.J. 449, 488 (1991).

The potential of one branch's action "to effect important change in the equilibrium of power is not immediately evident, and must be discerned by a careful and perceptive analysis." *Morrison*, 487 U.S. at 699, 108 S. Ct. at 2623. The judiciary bears the constitutional duty to decide cases and, thus, must have access to the tools that are part and parcel to carrying out this responsibility. By restricting who can file briefs, the legislature limits the courts' sources of knowledge—source inextricably intertwined with the courts constitutional power to decide cases. *Richardson v. Fitzgerald*, 132 Iowa 253, 255, 109 N.W. 866, 867 (1906) ("[A]ny direction by the Legislature that the judicial function shall be performed in a particular way is a plain violation of the Constitution."). Another branch can't be permitted, through a statute implementing a rule of practice or otherwise, to disarm the court of the means required to fulfill the core judicial power. Madison warned in *The Federalist No. 48* not only of the danger presented when one branch "directly and completely" performs the functions of a separate branch but also of the danger when one branch "posses[es], directly or indirectly, an overruling influence over

the others in the administration of their respective powers." *The Federalist No. 48*, at 332 (James Madison). "Certain implied powers must necessarily result to our Courts of justice from the nature of their institution." *United States v. Hudson & Goodwin,* 11 U.S. (7 Cranch) 32, 34. These powers must include an ability by the judiciary to summon and consider information for its decision.

Our prior cases are of little help in resolving the separation of powers question presented in this case. In *Critelli*, we held the court had residual inherent common law power to adopt the procedural rule challenged in that case. 244 N.W.2d at 569. But that case didn't involve any question about whether a rule of practice enacted by the legislature usurped the judiciary's power to determine for itself the sources of information it could request or consider in deciding cases.

The majority cites four other cases to suggest we've previously recognized the constitutionality of legislative regulations on court practices or procedures. Not so. Each of the cases addresses subjects other than the one in the problematic statute here. Two of the cases, *Root v. Toney* and *State v. Olsen*, analyzed statutes that set certain appellate deadlines. 841 N.W.2d 83, 89–90 (2013); 180 Iowa 97, 99, 162 N.W. 781, 783 (1917). Neither deadline impacted the court's ability to perform core powers "to decide and pronounce a judgment and carry it into effect," as does the statute in this case. *Klouda,* 642 N.W.2d at 261. A third cited case, *Andrews v. Burdick*, addressed a challenge to a statute that set a requirement for the amount in controversy for appeals. 62 Iowa 714, 721, 16 N.W. 275, 279 (1883). That statute thus involved a jurisdictional limitation about when a case was properly before the court, not a procedure that restricted courts' abilities to receive and consider briefs. And the fourth case, *Wine v. Jones*, analyzed a statute that imposed a filing

requirement on an appealing party to separately number and cite the points of error in the lower court's ruling. 183 Iowa 1166, 1175, 168 N.W. 318, 320–21 (Iowa 1918). Again, this requirement doesn't raise potential impediments to the court's ability to interpret and decide issues properly before it.

The majority completely passes on the "shall not consider" language in the second sentence of Iowa Code section 814.6A(1) and instead focuses solely on the prohibition on the filing of the briefs in the first sentence. The majority's conclusion—that the "shall not consider" directive "is merely tautological surplusage"—rests on a faulty textual analysis. Our long-established canons of interpretation—fittingly named "The Surplusage Canon" by Justice Scalia and Bryan Garner in their treatise *Reading Law: Interpretation of Legal Texts*—require that every word and every provision in a statute or constitutional text is to be given effect, if possible, and *not* deemed mere surplusage. Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 174 (2012) [hereinafter Scalia & Garner]. No word should be ignored, and no provision should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence. *Id.*; *accord United States v. Butler*, 297 U.S. 1, 65, 56 S. Ct. 312, 319 (1936) ("These words cannot be meaningless, else they would not have been used."). The principle is so well established it's commonly referred to by its Latin phrase *verba cum effectu sunt accipienda.* Scalia & Garner, at 174. Our court has relied on this principle—that we do not interpret the legislature's language in statutes as meaningless or redundant—throughout our jurisprudence. *See, e.g., Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981); *Petition of Chapman*, 890 N.W.2d 853, 857 (Iowa 2017). To do so—to ignore the legislature's dictates as mere "tautological

surplusage"—puts the court on its own collision course with the separation of powers. The majority's break with this long-established judicial interpretive canon brings into focus the problem with the "shall not consider" language in this statute: If we don't ignore it, we're faced with the intractable separation of powers problem it presents.

The majority asserts that we have allowed criminal defendants to file pro se supplemental briefs "as a matter of grace." I resist the view that appellate rule 6.901(2) was some exercise of the court's largesse to give defendants a token chance to file something. Courts are too busy and time too limited. Rather, I view the rule as the court's invitation to receive directly from criminal defendants arguments the court deemed potentially relevant—and potentially *useful*—to its decision-making process. *See, e.g.*, *State v. Hanes*, 790 N.W.2d 545, 556–57 (Iowa 2010) (evaluating, and finding merit in, arguments offered in the defendant's pro se supplemental brief). I can't say that section 814.6A's briefing prohibition doesn't create some potential efficiencies; nor can I say that it does. But even if the challenged statute provides useful procedural prescriptions, it doesn't follow that they are constitutional. "[T]hat a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution," for "[c]onvenience and efficiency are not the primary objectives—or the hallmarks—of democratic government." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499, 130 S. Ct. 3138, 3156 (2010) (alteration in original) (quoting *Bowsher v. Synar*, 478 U.S. 714, 736, 106 S. Ct. 3181, 3193 (1986)).

Under the Iowa Constitution, the supreme court constitutes a court for the correction of errors at law under such restrictions as the general assembly may, by law, prescribe. Iowa Const. art. V, § 4. The legislative

power to control the court's jurisdiction is the power to control what parties and cases may come before the court and when. *See In re Marriage of Mantz*, 266 N.W.2d 758, 759 (Iowa 1978); *Franklin v. Bonner*, 201 Iowa 516, 518, 207 N.W. 778, 779 (1926). But once a case is before the court, the legislature doesn't have the power to control the arguments the parties may make, just as it doesn't have the power to control what courts may use, or consider, in arriving at their decisions. A statute that purports to restrict both the court's sources of information and what courts may contemplate in the decision-making process necessarily infringes the judiciary's ability to interpret the law.

As Justice Scalia said in *Plaut v. Spendthrift Farm, Inc.*, the constitutional separation of powers serves as "a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict." 514 U.S. at 239, 115 S. Ct. at 1463. I find the majority's holding today troubling, not only for the separation of powers violation it approves in this case but also for the constitutional safeguards it removes in future cases.

Could the legislature now tell the judiciary it shall not permit and shall not consider briefs of amicus curiae? Could the legislature tell the judiciary it shall not permit and shall not consider oral arguments? Or could the legislature forbid or add other particular sources of information to a court's decision-making sources? After all, if the legislature can forbid consideration of a brief *in toto*, it arguably can forbid consideration of particular components of briefs. For example, could the legislature tell the judiciary it "shall not consider" citations to law review articles in deciding cases? Or that courts "shall not consider" arguments in briefs that the words in a law should be given their ordinary meanings at the time the law

was enacted (i.e., an antioriginalist requirement)? Having now permitted the legislature to dictate the sources of information the court may solicit and use in its decision-making process, it's hard to see how any of these things are off-limits. And once this particular separation-of-powers safeguard is removed, a wide assortment of constitutional abuses becomes possible.

In response, the majority in a footnote demurs that these hypotheticals are not before us but then offers this: "[W]e agree there are constitutional limits to the legislative department's authority to regulate practice and procedure in Iowa's courts." This concession is, of course, a correct statement of Iowa constitutional law, but it can't be reconciled with the incorrect statement the majority enunciates and relies on for its holding in this case: that the Iowa constitution "reserves to the legislative department authority to regulate the practice and procedure in all Iowa courts." Again, that's not what the constitution says—rather, it vests the legislature with the power "to provide for a *general system* of practice" for the courts but nowhere empowers the legislature to implement procedural rules that restrict what courts may consider in deciding cases. Iowa Const. art. V, § 14 (emphasis added). And it's not what the constitution does—rather, it limits one branch's "exercise of powers properly belonging to" another branch through the constitutional separation of powers. Iowa Const. art. III, Three Separate Departments, § 1.

The majority's suggestion in the footnote that in the future we might decide differently challenges to these hypothetical legislative commands is faint consolation. Precedent matters. *See Youngblut v. Youngblut*, 945 N.W.2d 25, 44 (Iowa 2020) (McDonald, J., dissenting) ("A compelling reason to change the law 'require[s] the highest possible showing that a precedent should be overruled before taking such a step.' " (alteration in

original) (quoting *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 249 (Iowa 2018))). As Justice Scalia wrote:

> For when, in writing for the majority of the Court, I adopt a general rule, and say, "This is the basis of our decision," I not only constrain lower courts, I constrain myself as well. If the next case should have such different facts that my political or policy preferences regarding the outcome are quite the opposite, I will be unable to indulge those preferences; I have committed myself to the governing principle.

Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179 (1989). The majority today commits to a governing principle with unconstitutional moorings that the majority itself appears unable to reconcile.

In addition, in some contexts, the legislature's refusal to permit a defendant to file a supplemental brief when represented by counsel may give rise to serious constitutional problems. For instance, when a criminal defendant's lawyer files an *Anders* brief arguing that any potential issues in the appeal are frivolous, the Constitution likely entitles the defendant to file a pro se response. *See Anders v. California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967). Under *Anders v. California*, an attorney who wishes to withdraw must file a motion "accompanied by a brief referring to anything in the record that might arguably support the appeal," including grounds the counsel thinks frivolous, and provide a copy of the brief to the defendant. *Id.* at 744, 87 S. Ct. at 1400. The defendant is then allowed "to raise any points that he chooses"—either pro se or by other counsel—supporting the appeal for the court to consider. *Id.*

Iowa Rule of Appellate Procedure 6.1005 formulates the *Anders* briefing process in Iowa. If defense counsel files a motion to withdraw, we direct that a defendant desiring to continue with the appeal "shall . . . rais[e] any issues [the defendant] wants to pursue" directly with the

supreme court. Iowa R. App. P. 6.1005(3)(*b*). Although states have modified other aspects of the *Anders* framework, "notifying the defendant of [the] withdrawal motion and giving him an opportunity to respond remain a standard component of state withdrawal procedures." 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.2(c), at 721 n.122 (4th ed. 2020). Yet under Iowa Code section 814.6A, the defendant could not make, and the court could not consider, any filing. So when the defendant's champion has asked to withdraw and urged the court to dismiss the appeal, the statute now prevents the criminal defendant from registering a protest.

No one would suggest that the judiciary could tell the legislature what kind of communications it could consider in the exercise of its constitutional responsibilities. For instance, no one would suggest that this court could tell the legislature to consider only communications through registered lobbyists and not directly from citizens in the crafting of legislation. The legislature has no power to engage in similar interventions in the judicial process and override a duly promulgated rule of this court relating to what it may consider. For those who prize an independent judiciary, free of unconstitutional transient intervention by political branches, this case takes us in an undeniably undesirable direction.

The framers recognized "parchment barriers" alone were insufficient to check another branch's "encroaching spirit of power." *The Federalist No. 48*, at 333 (James Madison). The constitutional system's actors thus, it was hoped, would assert and defend their powers acting with "the necessary constitutional means, and personal motives, to resist encroachments of the others." *The Federalist No. 51*, at 349 (James Madison). In this way, the actors in each branch would serve as a "centinel

over the public rights." *Id.* And nowhere was the framers' concern for potential overreach aimed more directly than at the legislature, since with "[i]ts constitutional powers being at once more extensive and less susceptible of precise limits, it can with the greater facility, mask under complicated and indirect measures, the encroachments which it makes" on the other branches. *The Federalist No. 48*, at 334 (James Madison).

An approach to the law that extols a bedrock principle but repeatedly compromises on the edges leads to the washing away of the principle along with the edges. If a statute and the constitution conflict, "then courts must resolve that dispute and, . . . follow the higher law of the Constitution." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. ___, ___, 140 S. Ct. 2183, 2219 (2020) (Thomas, J., concurring in part and dissenting in part) (alteration in original) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. ___, ___, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring)). In the challenged statute, a judicial power is being exercised by the legislature. I concur in the majority's opinion in division II on the evidentiary issues presented. But I respectfully dissent from division III and would hold section 814.6A unconstitutional as a violation of the separation of powers.

Christensen, C.J., and Appel, J., join this concurrence in part and dissent in part.